*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRUCE H., | ) | |
| | ) | Supreme Court No. S-16360 |
| Appellant, | ) | |
| | ) | Superior Court No. 3UN-12-00025 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JENNIFER L., | ) | |
| | ) | No. 7204 – October 6, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Unalaska, Pat L. Douglass, Judge.

Appearances: Justin Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellant. Kris O. Jensen, Law Offices of Dan Allan & Associates, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

Following a divorce a mother and father reached a custody settlement giving the mother sole legal and primary physical custody of their son; the father had visitation at the mother's discretion. After the father later requested joint legal and shared physical custody, the mother sought authorization to relocate with the child out of state. At a combined hearing on both issues the father presented evidence that the mother may have committed domestic violence against a former boyfriend. The superior

court denied the father's custody modification request for failure to demonstrate a substantial change in circumstances. The court granted the mother authorization to move, finding her reasons for relocating legitimate and determining that the child's best interests were served by staying with the mother. Under the court's subsequent order the mother maintained sole legal and primary physical custody, with limited visitation by the father. The father appeals the court's denial of his custody modification motion, determination that the mother's move was legitimate, best interests determination, and visitation award. We affirm the determination that the mother's move was for legitimate purposes; however, because we vacate the underlying finding that no domestic violence occurred between the mother and her former boyfriend and remand that issue for renewed consideration, we also must remand the ultimate custody decision for renewed consideration. The visitation decision necessarily follows the custody decision and should include findings sufficient for appellate review.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jennifer L. and Bruce H.[1] married in Kentucky in 2010. Their only child was born in September of that year. Shortly after their son's birth the family moved to Unalaska. When Jennifer and Bruce divorced in 2012 they agreed Jennifer would have primary physical and sole legal custody of their son.

In the years immediately following the divorce, the son was in Jennifer's care full time; Bruce visited only sporadically. But for at least two years prior to trial, the son stayed overnight with Bruce — who lived with his girlfriend and their daughter, the son's half-sister — about three nights per week.

---

[1]    We use initials for privacy protection.

## B.    Proceedings

In February 2016, when their son was five years old, Bruce requested a modification to joint legal and shared physical custody.  In an accompanying affidavit Bruce accused Jennifer of exposing their son to tumultuous and violent relationships and failing to provide him proper care.  While Bruce's motion was pending, Jennifer indicated that she intended to move with their son to Kentucky to live with her mother and that she already had arranged their transportation.  Jennifer then filed a motion seeking the court's authorization for her relocation with the child to Kentucky.

The superior court ordered a joint evidentiary hearing on the motions.  Bruce testified about his stable family life and his relationship with his son, and he called several witnesses who attested to his parenting abilities.  Jennifer testified about her motives for moving to Kentucky, including her resignation from her job in Unalaska, a difficult relationship breakup, a desire to be near family, and the opportunity to further her education in Kentucky.  Jennifer said that she had been planning to move for some time and had not realized she needed court permission to do so.

Jennifer, Bruce, and Jennifer's mother testified that in Kentucky Jennifer and the child would be near Jennifer's family members, as well as Bruce's other son and Bruce's parents in Tennessee.  Jennifer and her mother described the area and nearby attractions, such as cities, parks, and museums.  Jennifer testified that she had supported visitation between Bruce and their son in the past and that she intended to continue supporting their relationship after the move.

Bruce called Jennifer's ex-boyfriend, Jose L., to testify about Jennifer's conduct as a parent, her history of drinking, and an allegation that she committed domestic violence against Jose.  Jose testified that during an argument "she tried to hit me, and I threw her to the ground and held her until the cops came."  Jose stated that he held Jennifer down by her neck.  He stated that the incident probably occurred in 2013,

but he was not certain.  Jose testified that Jennifer was "fairly intoxicated" at the time, that they argued often, and that there may have been other violent episodes.  Jose admitted that Jennifer's attempt to hit him could be seen as self-defense.

Jennifer also testified about the incident, saying that she did not remember what exactly caused their argument, but "I do know that [Jose] shoved me, trying to make me leave," and "the argument progressed from there and . . . [he] ended up holding me down on the ground, and when I stood up is when I swung at him."  Neither witness testified that Jennifer actually hit Jose.  They disagreed only about timing, with Jose testifying that Jennifer tried to hit him before he pinned her to the ground and Jennifer testifying that she tried to hit him when she stood up afterward.

After the hearing the superior court issued a modified child support and custody order and an accompanying order addressing both parties' arguments.  The court denied Bruce's motion to modify custody, ruling that he had failed to show a substantial change in circumstances.  Responding to Bruce's argument that the alleged domestic violence constituted a substantial change in circumstances, the court stated that "there is no time frame associated with this alleged incident and no testimony in support of the allegation, nor is there a report that this incident resulted in judicial proceedings or has occurred on multiple occasions."  But because Jennifer was planning to relocate with their son, the court determined she had alleged a substantial change in circumstances. The court found Jennifer's motives for moving to Kentucky — employment, family, and educational and extracurricular opportunities for the child — were legitimate.

The court next addressed whether physical custody with Bruce in Unalaska or with Jennifer in Kentucky would better serve their son's interests.  Analyzing each

best interests factor individually,[2] the court found that the stability factor slightly favored Jennifer because, although moving away from the son's father and childhood home would be disruptive, separating the child from Jennifer, his "primary parent," could be more harmful. The court addressed the domestic violence incident again in the context of the best interests factors, concluding that it "does not rise to the level of domestic violence as defined by AS 25.24.150(g)." After weighing all the factors, the court determined that Jennifer should have primary physical custody; she also retained sole legal custody without comment by the court. The court awarded Bruce visitation consisting of one 30-minute phone call per week, a two-week summer visit, and alternating Christmas and spring break visits.

Bruce appeals a number of the court's decisions, including its finding that Jennifer's move was legitimate; its best interests determination; its implicit legal custody award; and its visitation order.

## III. STANDARD OF REVIEW

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[3] "Whether the superior court applied the correct legal standard is a question of law that we review de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason[,] and policy.' "[4] The superior court has broad discretion in determining "whether, following

---

[2]     *See* AS 25.24.150(c)(1)-(9) (enumerating factors to be considered in child custody best interests determinations).

[3]     *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1090 (Alaska 2015) (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

[4]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (quoting *McQuade v. McQuade*, 901 P.2d 421, 423 n.3 (Alaska 1995)).

an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[5]

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests. We will set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[6] A factual finding is erroneous if, "based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made."[7]

We review visitation awards for abuse of discretion.[8]

## IV. DISCUSSION

### A. The Superior Court's Denial Of Bruce's Modification Motion Was Based On Clearly Erroneous Factual Findings And Erroneous Legal Conclusions.

A parent seeking to modify custody bears the burden of showing a substantial change in circumstances sufficient to justify modifying custody.[9] A crime of domestic violence is a substantial change of circumstances as a matter of law,[10] and for

---

[5] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (citing *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012)).

[6] *Rego*, 259 P.3d at 452 (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[7] *Id.* (citing *Ebertz*, 113 P.3d at 646).

[8] *Skinner v. Hagberg*, 183 P.3d 486, 489 (Alaska 2008) (citing *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987)).

[9] *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014).

[10] AS 25.20.110(c) ("In a proceeding involving the modification of an award for custody of a child or visitation with a child, a finding that a crime involving domestic (continued...)

physical custody purposes an out-of-state move is a substantial change of circumstances as a matter of law.[11] In denying Bruce's motion to modify custody, the superior court found, "[r]egarding the accusation that [Jennifer] hit her boyfriend, there is no time frame associated with this alleged incident and no testimony in support of the allegation." Having found no evidence of domestic violence and no other substantial change, the court denied Bruce's motion to modify legal and physical custody.

The superior court's discussion of domestic violence was based on clearly erroneous factual findings and erroneous legal conclusions. The court stated that there was no time frame associated with the alleged incident, but both Jose and Jennifer testified that the incident probably occurred in 2013. The court found there was no testimony supporting the allegation,[12] but it was the principal issue in Jose's testimony, and Jennifer also testified about it. The court also noted there was "no report that this incident resulted in judicial proceedings or has occurred on multiple occasions," but neither separate judicial proceedings nor multiple incidents of domestic violence are

---

[10]     (...continued)
violence has occurred since the last custody or visitation determination is a finding of change of circumstances . . . .").

[11]     *Judd v. Burns*, 397 P.3d 331, 341 (Alaska 2017) ("While an out-of-state move is a substantial change in circumstances for physical custody purposes, it is not necessarily a substantial change for legal custody purposes.").

[12]     Alaska Statute 25.90.010 defines domestic violence by reference to AS 18.66.990. The latter definition includes "a crime against the person under AS 11.41," as well as "an attempt to commit the offense." AS 18.66.990(3). Attempted assault in the fourth degree therefore qualifies as a domestic violence crime. *See* AS 11.41.230(a) ("A person commits the crime of assault in the fourth degree if . . . by words or conduct that person recklessly places another person in fear of imminent physical injury."); *Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (holding attempt to commit assault in the fourth degree would fall within meaning of domestic violence).

required to find a substantial change of circumstances when there is a finding of a crime of domestic violence.[13] We must therefore vacate these erroneous determinations.

The posture of this case requires us to remand for the superior court to reconsider Bruce's modification motion. The court determined that Jennifer's move amounted to a substantial change in circumstances and proceeded to the best interests analysis; in some circumstances that would render moot a competing modification motion alleging a different substantial change in circumstances. But a move "is not necessarily a substantial change for legal custody purposes."[14] Because only Bruce sought to modify legal custody, when the court denied Bruce's motion and considered only Jennifer's it did not address whether joint legal custody was in the child's best interests. It is therefore necessary to remand for the court to revisit its domestic violence findings and reconsider Bruce's modification motion. We note that the superior court should separately consider Bruce's stated reasons for modifying legal custody when reviewing his substantial change of circumstances allegations.[15]

## B. The Superior Court's Finding That Jennifer's Move Was Legitimate Was Not Clearly Erroneous.

In relocation cases the superior court must assess first the legitimacy of the move and then the child's best interests under AS 25.24.150(c).[16] If the reasons for

---

[13] *See* AS 25.20.110(c) ("[A] finding that a crime involving domestic violence has occurred since the last custody or visitation determination is a finding of change of circumstances . . . .").

[14] *Judd*, 397 P.3d at 341.

[15] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (holding that, at substantial change of circumstances stage, "[t]he concepts of legal and physical custody deserve separate analysis").

[16] *See Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011).

moving are legitimate, then "there is no presumption favoring either parent when the court considers the child's best interests."[17]  In making its best interests determination, "the superior court must assume that the legitimate move will take place and consider the consequences that the move will have on the child — both positive and negative."[18]

Bruce first challenges the legitimacy of Jennifer's move.  For a move to be legitimate, the moving parent must show that the move "is not primarily motivated by a desire to make visitation more difficult."[19]  We do not require the moving parent to prove a compelling reason to move so long as the primary motivation is not limiting visitation with the other parent.[20]  When a legitimacy finding is based on a court's assessment of a parent's credibility, we "give it particular deference."[21]

Here the superior court determined that Jennifer's move was legitimate, noting that she was moving closer to family, seeking employment, and providing the

---

[17]     *Id.* (citing *McQuade v. McQuade*, 901 P.2d 421, 424 (Alaska 1995)).

[18]     *Id.* (citing *Eniero v. Brekke*, 192 P.3d 147, 150 (Alaska 2008); *Fardig v. Fardig*, 56 P.3d 9, 13 n.12 (Alaska 2002); *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001)).

[19]     *Id.* (citing *Moeller-Prokosch*, 27 P.3d at 316).

[20]     *See, e.g.*, *Judd v. Burns*, 397 P.3d 331, 336-37 (Alaska 2017) (explaining that "[w]hile vague and aesthetic motives may be less convincing than more easily explained ones, moving to be 'more happy' or to 'enjoy better weather year-round' may be sufficient; indeed, the superior court does not need to be able to identify the primary motivation at all as long as it can exclude 'a desire to make visitation more difficult' "); *Silvan v. Alcina*, 105 P.3d 117, 121 (Alaska 2005) (noting court found "desire to get away from the State of Alaska" a legitimate reason for moving).

[21]     *Kristina B. v. Edward B.*, 329 P.3d 202, 214 (Alaska 2014) (citing *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

child new educational and extracurricular opportunities. The court found that Jennifer's move was not motivated by a desire to "prevent [Bruce] from interacting with his child."

Bruce calls into question the facts cited by the superior court as reasons for Jennifer's move, but he points to no evidence that Jennifer's primary intent was to limit his time with their son. Bruce argues that Jennifer's desire to be near family "was simply a matter of convenience" and that Jennifer "was not entirely sure whether she would be employed" in Kentucky. He refutes the court's finding that the educational opportunities and family support for their son partly motivated the move. But the court's findings were based largely on its assessment of Jennifer's credibility — which we view with "particular deference"[22] — when she stated that she "wishe[d] to move in order to be closer to her family and to seek better employment prospects in Kentucky." Even assuming Bruce's assertions are correct, they do not show that Jennifer's primary motive was to limit Bruce's visitation.[23]

Bruce also points to the timing of Jennifer's relocation motion as evidence of a motive to limit his custody. He argues that Jennifer made plans to move, including purchasing plane tickets, without informing him or the court and that her plans indicated an illegitimate motive. The superior court acknowledged that Bruce and Jennifer "disagree[d] about [Jennifer's] moving timeline." But the court contrasted Jennifer's conduct with that in *Hamilton v. Hamilton*, where the moving parent attempted to "abscond" with the children without notice to the other parent.[24] Unlike in that case, where the moving parent made plans to move with the children and attempted to deceive the other parent about those plans, here Jennifer testified that she began making moving

---

[22]    *Id.* (citing *Limeres*, 320 P.3d at 296).

[23]    *See Judd*, 397 P.3d at 336-37.

[24]    42 P.3d 1107, 1114 (Alaska 2002).

arrangements before realizing she needed the court's permission to relocate with the child.[25] It was not error for the court to rely on Jennifer's testimony and decline to hold her travel arrangements against her in its legitimacy determination.

Bruce also notes that Jennifer filed her motion to relocate shortly after Bruce sought increased custody of their son, a fact the court recognized in its findings. But questionable timing alone ordinarily does not make a move illegitimate, especially when the moving parent has a history of supporting a child's relationship with the other parent. In *Judd v. Burns*, for instance, we affirmed the finding of a legitimate move despite the allegation that the moving parent had "a pattern of moving to avoid sharing custody."[26] We explained that although the mother had previously moved out of state with an older child, she had made efforts to support the relationship between the older child and the child's father after that move.[27] Here the court found that Bruce "ha[d] not presented credible evidence that [Jennifer] ha[d] prevented him from visiting with [their son]." Instead, the record shows that Jennifer supported Bruce's relationship with their son. Bruce has not shown that the court's finding of a legitimate move was clearly erroneous.

### C. The Superior Court's Best Interests Determination Was Partly Based On Its Erroneous Domestic Violence Findings.

#### 1. Overview

Once a parent moving out of state makes a threshold showing that the proposed move is legitimate, the court must consider the nine factors listed in AS 25.24.150(c) to "determine custody in accordance with the best interests of the

---

[25] *See id.*

[26] 397 P.3d at 337.

[27] *Id.*

child."[28]  In its best interests analysis "the court may consider only those facts that directly affect the well-being of the child."[29]  Here the court analyzed each factor listed in AS 25.24.150(c) and determined that eight of the best interests factors did not favor either parent.  It found that the stability factor, "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity,"[30] slightly favored Jennifer.  The court accordingly awarded Jennifer primary physical custody.

Bruce disputes the court's factual findings pertaining to four of the statutory factors:

> (2) the capability and desire of each parent to meet [the child's] needs;
>
> . . . .
>
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> . . . .
>
> (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
>
> (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child . . . .[31]

---

[28]     *Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011).

[29]     AS 25.24.150(d).

[30]     AS 25.24.150(c)(5).

[31]     AS 25.24.150(c).

### 2.    Domestic violence

We begin with the superior court's domestic violence findings under AS 25.24.150(c)(7); those findings resemble its description of the domestic violence allegations in its "substantial change in circumstances" analysis. The court stated, in full:

> Regarding the accusation that [Jennifer] hit her boyfriend, there is no time frame associated with this alleged incident and no testimony in support of the allegation, nor is there a report that this incident resulted in judicial proceedings or has occurred on multiple occasions. This does not rise to the level of domestic violence as defined by AS 25.24.150(g).

As we explained above, the superior court's findings that there was no time frame and no testimony in support of the alleged incident are clearly erroneous. The court's legal analysis under this factor is also flawed. Neither the best interests statute nor our precedent requires evidence of either separate judicial proceedings or multiple instances of domestic violence to make domestic violence findings in a custody dispute.[32] And the court improperly relied on AS 25.24.150(g) to define domestic violence. That statute contains no such definition, instead describing the presumption against awarding custody to a parent with "a history of perpetrating domestic violence."[33] These factual

---

[32]    AS 25.24.150(c)(7) (requiring superior court to consider "*any evidence* of domestic violence . . . in the proposed custodial household" (emphasis added)); *see Veselsky v. Veselsky*, 113 P.3d 629, 636 (Alaska 2005) (affirming superior court's best interests determination relying on testimony and statements by parent to counselor about domestic violence); *see also Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1201 (Alaska 2012) (affirming superior court's decision relying on trial testimony to find domestic violence and apply domestic violence presumption).

[33]    AS 25.24.150(g). Alaska Statute 25.90.010, and, by reference, AS 18.66.990, define domestic violence, but the superior court cited neither when determining that Jennifer had not committed domestic violence.

-13-                                                                                            **7204**

and legal errors require us to reverse the superior court's domestic violence findings and remand for reconsideration of this factor and the best interests determination.[34]

### 3.	Child's needs, stability, and parental substance abuse

The superior court determined under AS 25.24.150(c)(2) that "both parents have the physical capacity to provide for [the child]'s needs." In making its determination the court found that both Jennifer and Bruce had been able to maintain homes and stable employment. The court found that Jennifer "has been [the child]'s primary caretaker since his birth." The court recognized Jennifer had recently lost her job and was "suffering from stress and depression," but nevertheless "has continued to provide for [the child]." Bruce also "had some difficulties in the past controlling his emotions but has since overcome these challenges."

Bruce argues that, because of Jennifer's "long-term pattern of instability" — including allegations of substance abuse, domestic violence, and mental health issues — the court's finding of relative stability on Jennifer's part was clearly erroneous. He also disputes the court's finding that Jennifer was their son's primary caretaker, noting that he and Jennifer shared custody for the previous two to three years.

The record supports the superior court's finding that both parents are capable of meeting their son's needs, and Bruce points to no evidence that Jennifer's

---

[34]	We generally require detailed domestic violence findings when a party alleges that the domestic violence presumption should apply. *See Sarah D. v. John D.*, 352 P.3d 419, 429-30, 434 (Alaska 2015) (remanding for detailed factual findings about domestic violence allegations that could have triggered presumption); *Williams v. Barbee*, 243 P.3d 995, 1003-04 (Alaska 2010) (remanding for "express findings" whether alleged domestic violence amounted to history of perpetrating domestic violence). Bruce has made no such claim here or to the superior court. Unlike the domestic violence presumption, the best interests determination involves the superior court's discretion in weighing factors such as evidence of domestic violence.

"pattern of instability" has affected her parenting.[35]  The court's finding that Jennifer had been the child's primary caretaker, especially in his early years, was also supported by trial testimony that Bruce did not actively participate in their son's upbringing until more recently.  The court's findings under AS 25.24.150(c)(2) are not clearly erroneous.

In determining stability under AS 25.24.150(c)(5), the superior court made the following factual findings:  the child "spends a majority of time with his mother"; the child's relationship with his half-sister in Unalaska was "balanced with the existence" of a half-brother near his proposed home in Kentucky; and Bruce's allegations about an overdose incident in Jennifer's home were "incredible."  The court ultimately determined "it could be far more unsettling for [the child] to change his primary parent" and found the stability factor favored Jennifer.  Bruce disputes each factual finding underlying the court's decision and argues that the court erroneously failed to consider geographic stability when making its determination.  Bruce asserts the court erred in determining that the factor favored Jennifer.

The superior court's finding that the child "spends a majority of time with his mother" was not clearly erroneous.  Although Bruce points to his and Jennifer's "de facto shared custody agreement," both he and Jennifer testified that Bruce had visitation with the child three nights per week but that before establishing that schedule their son had lived with Jennifer full time.  That testimony supports the court's finding that the child spends a majority of his time with his mother.

Bruce argues that the superior court erred by comparing the child's bond with his half-sister in Unalaska to the relationship with his half-brother in Kentucky.

---

[35]     *See Rego v. Rego*, 259 P.3d  447, 460-61 (Alaska 2011) ("We have explained that 'instability in relationships [does not] warrant a custody change where the parent's conduct does not adversely affect the child or the . . . parenting abilities.' " (alterations in original) (quoting *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985))).

Trial testimony showed the child has a loving relationship with both half-siblings; that finding was not clearly erroneous.

The superior court also addressed trial testimony regarding a third-party's overdose in Jennifer's home, calling it "an isolated incident" and noting "[t]here was no indication that [the child] witnessed the incident but he did attend counseling afterward." Based on those findings and "the fact that [Bruce] still appears to only want shared custody," the court deemed Bruce's allegations about the overdose incident "incredible." Bruce disputes the court's findings about the overdose incident, arguing that, by describing his allegations as "incredible," the court erroneously determined the incident did not occur and held the allegation against Bruce when making its stability determination. But the court found that the incident occurred. Its use of the word "incredible" appears to refer only to Bruce's allegation that the incident reflected poorly on Jennifer's parenting abilities. The court did not hold Bruce's allegations against him; it merely declined to hold them against Jennifer. The court's findings about the overdose incident were not clearly erroneous.

Bruce also argues that superior court failed to adequately consider geographic stability when making its stability determination. We expect the superior court to consider both "geographical continuity" and "relational stability" when making its stability determinations.[36] But "[w]e have noted that a 'continuity test centered entirely on the child's geographic stability would always favor placing the child with the non-moving parent.' "[37] Here the court acknowledged that the child "spent most of his

---

[36]     *Chesser-Witmer v. Chesser*, 117 P.3d 711, 719 (Alaska 2005) (quoting *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)).

[37]     *Id.* (quoting *Meier*, 34 P.3d at 1279).

life in Unalaska" but also "lived most of his life with his mother." The court therefore did not disregard geographic stability in making its determination.[38]

Bruce finally disputes the superior court's ultimate conclusion that the stability factor favored Jennifer, arguing there "was no evidence to support the trial court's finding that it would be more unsettling to [the child] to remain in Unalaska in his father's household than relocating with [Jennifer] to Kentucky." But the court's determination was supported by its findings that the child had spent the majority of his life in his mother's care. Bruce has not shown the superior court's stability determination under AS 25.24.150(c)(5) was clearly erroneous.

The superior court found under AS 25.24.150(c)(8) that Jennifer "may have [had] issues with alcohol," including "drink[ing] alcohol while on anti-depressants." The court found that "[w]hile this is concerning, there was no evidence presented to suggest that [Jennifer's] alcohol use has directly affected the emotional or physical well-being of [the child]." The court ordered Jennifer to undergo a substance abuse evaluation. Bruce disputes the court's finding that Jennifer's drinking had no effect on their son, pointing to Jose's testimony that while drunk Jennifer once wanted to leave with the child, and Jose threatened to call the police if she drove. But the record supports the court's finding: Jose testified that Jennifer "made arrangements for a friend to come pick her up" instead of driving. Bruce also points to the court's order that Jennifer undergo an alcohol assessment as evidence her drinking affected their son. This

---

[38] Nor was the court required to consider Jennifer's alleged "disruptive relationship history," as Bruce argues, unless that history had an effect on her parenting abilities or the child. *Rego*, 259 P.3d at 460-61 ("We have explained that 'instability in relationships [does not] warrant a custody change where the parent's conduct does not adversely affect the child or the . . . parenting abilities." (alterations in original) (quoting *S.N.E*, 699 P.2d at 878)). Bruce points to no such effect.

does not contradict the court's finding that Jennifer's drinking did not affect the child. The court's findings under this factor were not clearly erroneous.

We conclude that the superior court's findings relating to domestic violence were clearly erroneous and based on an incorrect legal analysis, but we find no clear error in the court's other factual findings. We remand for the court to reconsider its domestic violence findings and analysis and to reweigh the best interests factors based on its new determinations. The court, of course, is free to hear new testimony and to modify its other factual findings if necessary.

**E.     The Superior Court's Limited Visitation Award Was Not Supported By Sufficient Findings.**

On remand the superior court will be required to revisit its visitation award if its custody decision changes. Even if the custody decision remains the same, the court must revisit its visitation award. We have recognized that "visitation is a 'natural right of the noncustodial parent that may not be taken away absent extraordinary circumstances.' "[39] We accordingly require courts awarding limited visitation to make findings supporting that decision "unless the reasons can be gleaned from the record."[40] Here, despite enjoying visitation with his son for three nights per week for at least two years prior to trial, Bruce was awarded visitation consisting of only one 30-minute phone or video call per week, two weeks of summer visitation, and alternating Christmas and spring break vacations. Although the child's Kentucky school schedule, which is year-round, may not permit an extended summer visit, the court did not explain its decision not to award Bruce reasonable additional visitation at other times during the year. On

---

[39]     *William P. v. Taunya P.*, 258 P.3d 812, 818-19 (Alaska 2011) (quoting 1 JEFF ATKINSON, MODERN CHILD CUSTODY PRACTICE § 5.2 (2d ed. 2010)).

[40]     *I.J.D. v. D.R.D.*, 961 P.2d 425, 432 (Alaska 1998) (citing *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190-91 (Alaska 1987)).

the record before us, "we are unable to discern why the trial court awarded such restricted visitation," and the court on remand must "make specific findings explaining the award" and may "expand the visitation award if appropriate."[41]

## V.  CONCLUSION

We VACATE the superior court's domestic violence findings and REMAND for a new consideration of Bruce's modification motion, the best interests analysis for physical custody (and legal custody if warranted), and visitation.  We AFFIRM the superior court's determination that Jennifer's move to Kentucky was legitimate.  We do not retain jurisdiction.

---

[41]     *Id.* And if the superior court awards Bruce visitation of over 27 consecutive days, it should make findings about whether Bruce is entitled to a visitation credit. *See* Alaska R. Civ. P. 90.3(a)(3); *Reilly v. Northrop*, 314 P.3d 1206, 1218 (Alaska 2013).