BOLGER, Chief Justice.
I. INTRODUCTION
A Juneau couple with three children separated, and the mother filed for divorce. Wishing to relocate with the children to Oregon for work, she requested primary physical custody. The superior court concluded that it was in the children's best interests to relocate with the mother. The father appeals. We conclude that the superior court's custody decision is supported by the record and follows the appropriate legal framework, so we affirm.
II. FACTS AND PROCEEDINGS
A. Facts
Brett and Amanda M. married in 2006. They have three children: Jacob, Randall, and Marie.[1] Marie sees an ophthalmologist in Seattle to treat an eye condition. She has also experienced developmental delays, and an individual education program (IEP) has been created for her that includes speech and physical therapy.
Brett and Amanda were living in Oregon when Jacob was born but moved to Juneau in 2008. They are both trained as physicians-Brett is a general surgeon and Amanda is a pediatrician-and they moved to Juneau for work. After Randall's birth they agreed that Amanda would stop practicing medicine to raise the children and that Brett would work extra hours to support the family.
The couple separated in August 2016 when Brett moved out of the family home. The children thereafter stayed with Brett several nights a week.
About a year after the separation, Amanda sought employment with a former colleague in Roseburg, Oregon. The former colleague offered Amanda a position in her practice in May 2018, and Amanda decided to relocate to Oregon.
B. Proceedings
Amanda filed for divorce in September 2017, requesting physical custody of the children.
*1008 The Juneau superior court held a three-day trial in June 2018. Much of the trial concerned the legitimacy of Amanda's proposed move. Amanda testified that, to allow for more time with the children, she did not want to work full time, and that there were no suitable part-time pediatric positions available in Juneau. She explained that she was familiar with Roseburg and believed she could ease back into her medical practice there in a way that ensured she had time to spend with the children. She presented the testimony of two Juneau pediatricians to support her position about job opportunities there. Amanda's would-be Oregon colleague also testified about her practice in Roseburg.
Brett called the director of physician services at Bartlett Regional Hospital in Juneau to rebut this testimony. Brett testified that he had alerted Amanda to three job openings while they were separated but that Amanda did not pursue them. He said that it would be difficult for him to travel to Roseburg to visit the children and that Amanda could have sought employment somewhere closer to Juneau.
Brett also testified that during the couple's separation, there were two incidents when Amanda refused to leave the children with him after an argument, taking them out of his car and interrupting a planned custody exchange. Amanda admitted that these incidents occurred. Brett also testified that Amanda had sent him a text threatening to interrupt a trip he had planned with the children to Florida.
At the close of testimony, the superior court issued an oral decision on the record awarding physical custody of the children to Amanda. The court first found that Amanda's proposed move to Roseburg was legitimate and not motivated by a desire to frustrate Brett's access to the children.[2] The court next addressed each statutory best interests factor in AS 25.24.150(c),[3] finding that the fifth factor-geographic and emotional stability-favored Amanda, while the remaining factors favored neither parent. Exercising its discretion under AS 25.24.150(c)(9), the court considered additional factors it deemed pertinent, finding that Brett had the resources to exercise liberal visitation, despite the distance between Roseburg and Juneau, and expressing confidence that he would continue to be involved in the children's lives.
After trial Brett filed a motion for reconsideration, which the court denied. Brett appeals both the custody order and the denial of his motion for reconsideration.
III. DISCUSSION
Brett argues that the superior court violated the law governing custody determinations *1009 and made clearly erroneous factual findings when it awarded custody to Amanda and denied Brett's motion for reconsideration. We conclude that the superior court did neither.
A. The Superior Court Did Not Commit Legal Error.
Brett contends that the superior court's order and its denial of his motion for reconsideration, taken together, fail to comply with the legal standards governing custody decisions. He specifically argues that (1) the superior court's findings were inadequate as a matter of law, (2) the superior court impermissibly based its decision on Amanda's primary caregiver status, and (3) the superior court did not engage in the symmetrical analysis required when one parent plans to relocate. We review de novo whether the superior court applied the correct legal standard.[4]
1. The superior court's factual findings were adequate.
We have explained that "[i]n reaching a final child custody determination, 'a trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review.' "[5] This requirement stems from AS 25.24.150(c).[6] The court's findings "need not be extensive"[7] but must be sufficient to demonstrate which of the nine best interests factors influenced the custody decision as well as how they were weighed against each other.[8]
The superior court here explicitly addressed each best interests factor and made clear that factors five and nine-the length of time the child has lived in a stable home and desirability of continuity, and other factors the court deems pertinent-formed the basis of its decision. These findings are sufficient for meaningful appellate review and not inadequate as a matter of law.[9]
2. The superior court engaged in proper symmetrical analysis of best interests factor five.
In a custody decision when one parent intends to move from Alaska, the trial court must use a two-step process to determine the children's best interests.[10] The court must first "determine whether the planned move is 'legitimate.' "[11] If the move is legitimate, the court must assume that the move will occur and engage in "symmetric consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without [the child]."[12] We have stressed that a symmetrical *1010 analysis of the fifth best interests factor is especially important and requires the court to consider both the emotional and geographic stability of the child.[13]
The superior court found that the children would have greater geographical stability in Juneau, where they had spent their whole lives, but this was outweighed by Amanda's "ability ... to provide superior emotional stability." The court explained its reasoning further in its denial of Brett's motion for reconsideration, stating that it
understood, appreciated, and accounted for [Brett's] capacity to provide his children emotional care and support. It also considered that [Jacob, Randall, and Marie] grew up in Juneau. ... The facts, however, indicated that the emotional stability [Amanda] provided was so profound and nuanced that it outbalanced the emotional and geographical stability [Brett] can provide.
This analysis did not suffer from the same imbalance that has characterized orders reversed for failure to conduct symmetrical analysis. In Saffir v. Wheeler , for example, the superior court awarded custody to the father after finding that the mother would interfere with his ability to parent if she relocated with the child.[14] We reversed, holding that the superior court had not engaged in proper symmetrical analysis because it "did not address the impact of removing the child from her established routine or from [her mother], the parent who established it."[15] The order here was not so one-sided; it considered the effect that living with each parent, and without the other, would have on the children. The superior court properly engaged in the symmetrical analysis required by our precedent.
3. The superior court did not impermissibly consider Amanda's primary caregiver status.
The superior court relied heavily on its finding that Amanda had been the children's primary caregiver in its analysis of the fifth best interests factor. Brett argues that Amanda's "alleged past primary caregiver status is, as a matter of law, not adequate to support" the superior court's findings. He also suggests that whether a parent is the primary caregiver is not relevant to the fifth best interests factor.
While Alaska law "does not automatically give a custodial preference to the primary caregiver," we have explained that "the primary caregiver inquiry may be relevant to the extent that it affects the determination of the child's 'stable, satisfactory environment and the desirability of maintaining continuity.' "[16] In fact we have explicitly stated that "[c]ourts should consider 'social and emotional factors such as who the primary caregiver was for the child' " when analyzing factor five.[17] Accordingly it was not legal error for the superior court to consider Amanda's primary caregiver status as an element in its fifth best interests factor determination. And Amanda's role as primary caregiver was not the sole basis for the court's finding; the superior court also considered her intention to limit her future work to part time and weighed the geographic and emotional stability of the children staying in Juneau with Brett against the emotional stability staying with Amanda would provide.
B. The Superior Court's Factual Findings Are Not Clearly Erroneous.
Brett also argues that several of the superior court's findings were clearly erroneous.[18] "A factual finding is erroneous if 'based *1011 on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made.' "[19] Brett specifically contests the findings that Amanda's move to Roseburg was legitimate, that factor one favored neither parent, that factor five favored Amanda, that factor six favored neither parent, and that additional considerations under factor nine supported the custody decision. Because each of the superior court's findings has support in the record, we conclude that none are clearly erroneous.
1. The finding that Amanda's move to Roseburg was legitimate is not clearly erroneous.
A parent's plan to relocate is considered legitimate if it is "not primarily motivated by a desire to make visitation ... more difficult."[20] The superior court here found that Amanda's proposed move to Roseburg was legitimate because it was motivated by a desire to find employment as a pediatrician; the court found that such employment was not available to her in Juneau. It noted that Amanda had a job offer in Roseburg and relied on the Juneau doctors' testimonies to conclude it would be difficult for Amanda to find employment as a pediatrician after spending eight years out of the workforce. The court further found that Amanda's proposed move was not "made for any effort to frustrate access to the children." These findings have support in the record.
Amanda testified that there were no suitable positions available with local providers. And other testimony indicated it would be infeasible for Amanda to open her own practice in Juneau because the market was saturated and doing so would require long hours. Therefore the court's finding that there was no suitable pediatric work available to Amanda in Juneau is supported by the record.
There is also support for the court's finding that Amanda had found a job in Oregon. Her former colleague testified that she had offered Amanda a job in her Roseburg practice and sent her a preliminary contract. Although Amanda testified that she and her former colleague were still working out the details of her employment, Amanda indicated that it would be part time.
Finally the record supports the court's finding that Amanda's move was not motivated by a desire to interfere with Brett's parenting. Amanda expressed regret over having interfered with Brett's visitation during their separation; she testified that she would not do so again, saying "[t]he kids deserve their time with their dad, and he deserves it too." She clarified on cross-examination that she "realized how damaging that could be for the children to feel like they're pulled between their parents." And discussing her move, Amanda testified that she had decided to stay in the Pacific Northwest so the children could be closer to Brett.
Brett points to conflicting evidence in the record about the availability of employment in Juneau and Amanda's interference with his relationship with the children. But the existence of conflicting evidence is not enough to establish clear error.[21] The record does not leave us convinced that the superior court made a clear and definite mistake when it found that Amanda's move to Roseburg was legitimate.
2. The finding that factor one favored neither parent was not clearly erroneous.
The first best interests factor requires the court to consider "the physical, emotional, mental, religious, and social needs of the child."[22] The superior court found that this factor favored neither parent. It explained *1012 that Amanda had proven her ability to provide for the children's needs by being a successful stay-at-home mother for eight years, that Brett had committed himself to working less and spending more time with the children, that the children had no special needs, and that Marie's needs-presumably referring to her IEP and eye condition-could be met in Roseburg.
The court's findings have support in the record. It was undisputed that Amanda had been the children's primary caregiver from 2010 to at least 2016, when the parties separated, and Brett does not argue that she was unable to provide for the children's needs during that period.[23] The superior court's finding that Amanda would be able to meet the children's needs based on her history as their primary caregiver was not clearly erroneous. And at trial Brett did not dispute testimony that Marie would be able to receive appropriate educational and medical services in Roseburg. Brett points to evidence that Amanda had not yet arranged for permanent housing in Roseburg, but this is not enough to demonstrate that the superior court made a clear and definite mistake.[24] It was not clear error for the court to find that factor one favored neither parent.
3. The finding that factor five favored Amanda was not clearly erroneous.
Brett argues that the superior court gave too much weight to Amanda's primary caregiver status when it found that Amanda would provide the children with greater emotional stability. Brett also contends that the court misunderstood the amount of time he spent with the children while he and Amanda lived together, that Amanda was no longer the children's primary caregiver at the time of trial, and that he has been very involved in the children's lives.
It was undisputed that the couple structured their marriage so that Amanda was the children's primary caregiver. Brett testified that he worked extra hours as a part of this arrangement to make enough to support the family, and that by 2014 he was regularly working 80 to 100 hour weeks. He said that he was not able to see the children as much as he would have liked during this period but he made sure he was home for dinner with the children and to put them to bed. Amanda testified that Brett was often disengaged and focused on work even when he was with the children.
The superior court acknowledged that Brett's parenting time had increased since the separation. But it reasoned that Amanda had been able to build a deeper relationship with the children because of her time spent as their primary caregiver during their formative years. We have previously approved of similar reasoning.[25] Moreover Amanda's detailed testimony describing the children's personalities and how the divorce had affected them supported the court's finding that she would provide them with significant emotional stability. And the superior court found that Amanda was "willing to work part-time" in Roseburg to maintain emotional continuity for the children; this also had support in the record.
The superior court noted that this was "a very difficult ... decision" and acknowledged Brett's strength as a father. But it ultimately determined that Amanda provided greater emotional stability to the children and that this outweighed the geographical stability they would enjoy if they stayed with Brett in Juneau. Even if the evidence may have supported a finding that factor five favored Brett, this would not provide grounds to reverse the superior court's finding.[26] Its *1013 conclusion is supported by the record and our precedent. This finding is not clearly erroneous.
4. The finding that factor six favored neither parent was not clearly erroneous.
The sixth best interests factor requires the trial court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[27] The superior court found that this factor favored neither parent, relying mainly on their courtroom demeanor. The court recognized that Amanda had interfered with Brett's custody in the past, but explained that her testimony showed regret for those actions and intent not to repeat them.
Brett argues that this was clear error, but the record supports the court's conclusion. We have explained that "[t]rial judges are in the best position to make determinations about the demeanor of the parties and how their relationships with each other will impact the child."[28] In light of this, we cannot conclude that the superior court's determination was clearly erroneous.
5. The finding that Brett had enough money to afford frequent visitation was not clearly erroneous.
Alaska Statute 25.24.150(c)(9) allows the trial court to consider "other factors that [it] considers pertinent." The superior court did so here, finding that "these folks are financially able to deal with issues of travel, issues of short and long stays, short and long terms of visitation" and indicating that its visitation order would allow for Brett's time with the children to be "liberally distributed." The court again described the couple's arrangement, whereby Amanda cared for the children while Brett worked long hours to support them, and explained that "because [Brett] has worked so hard, ... whatever the location of the children and whatever ... needs the parties need to coordinate in terms of visitation, you have the funds to be able to do that."
Brett argues that the court should not have considered his ability to visit the children frequently but does not provide any explanation for why it was improper to do so. His high income was undisputed at trial, and the court reasonably took it into account.
C. The Failure to Consider Appointment Of A Guardian Ad Litem Was Not Plain Error.
Alaska Statute 25.24.310(c) requires the appointment of a guardian ad litem (GAL) when "in the opinion of the court, representation of the child's best interests, to be distinguished from preferences, would serve the welfare of the child." The statute provides that the court may appoint a GAL "upon the motion of either party or upon its own motion."[29] Neither party requested that a GAL be appointed in this case. The superior court did not appoint one on its own initiative and made no findings on the record about whether or not a GAL was necessary.[30]
Brett argues that the superior court violated AS 25.24.310(c) by failing to consider the necessity of a GAL. Since Brett did not raise the issue before the superior court, we review it under a plain error standard and will reverse only "where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[31]
Alaska Civil Rule 90.7(a) explains the circumstances in which a GAL may be appointed. It states that separate representation of a *1014 child's interests may be necessary "when the [GAL] may be expected to present evidence not otherwise likely to be available or presented, or the proceeding is unusually complex."[32] The commentary to the rule explains that "[c]ourts should not routinely appoint [GALs] in custody ... proceedings. In most instances, the child's best interests are adequately protected and presented by the parties."[33]
Brett fails to establish that the circumstances described in the rule existed in this case. He argues that a GAL could have presented evidence about "whether schooling and therapists are available for the children in Oregon" and about "[Amanda]'s unsettled housing situation." But Brett does not explain why the appointment of a GAL was necessary to develop this evidence. Indeed, Amanda was able to present evidence on these issues, and Brett had the opportunity to challenge her testimony on cross-examination but chose not to.
There is no indication from the record that this case was unusually complex or that the parents would be unable to adequately present or protect the children's best interests. We therefore conclude that it was not plain error for the superior court to neither consider the appointment of a GAL nor appoint one on its own motion.
D. The Superior Court Did Not Abuse Its Discretion By Denying Brett's Motion For Reconsideration.
Alaska Civil Rule 77(k) allows a party to move for reconsideration of an issue when it believes that the trial court, among other things, "has overlooked or misconceived some material fact or proposition of law."[34] Brett appeals the superior court's denial of his motion for reconsideration. We review for abuse of discretion.[35]
In his motion for reconsideration, Brett largely challenged the superior court's analysis of the best interests factors and made several factual allegations that he had not presented at trial. In denying the motion, the superior court explained that it would not consider evidence raised for the first time in a motion for reconsideration and that Brett "should have raised the points during his case-in-chief."
Brett argues that this was an abuse of discretion. But we have made it clear that "courts will ordinarily not consider new evidence in a motion for reconsideration."[36] While there are circumstances in which a court may consider evidence presented for the first time in such a motion,[37] it is not an abuse of discretion to refuse to do so.[38]
Brett also argues that the language the court used in its order denying his motion demonstrates that the court misconstrued evidence and overlooked several material facts. Having reviewed the record we cannot agree. As discussed above, the court's custody decision is well supported by the record. It was not an abuse of discretion to deny Brett's motion for reconsideration.
IV. CONCLUSION
The superior court's decision is AFFIRMED.

Pseudonyms have been used for all family members to protect their privacy.

"[D]etermining what custody arrangement is in the best interests of the child" when a parent chooses to move out of Alaska includes "determining whether there are legitimate reasons for the move." Moeller-Prokosch v. Prokosch (Moeller-Prokosch I ), 27 P.3d 314, 316 (Alaska 2001). A proposed move is legitimate if it is not "primarily motivated by a desire to make visitation more difficult." Rego v. Rego , 259 P.3d 447, 453 (Alaska 2011).

Alaska Statute 25.24.150(c) provides:
The court shall determine custody in accordance with the best interests of the child under AS 25.20.060 -25.20.130. In determining the best interests of the child the court shall consider
(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

Bruce H. v. Jennifer L. , 407 P.3d 432, 436 (Alaska 2017).

Smith v. Weekley , 73 P.3d 1219, 1222 (Alaska 2003) (quoting Duffus v. Duffus , 932 P.2d 777, 779 (Alaska 1997) ).

See AS 25.24.150(c) ("In determining the best interests of the child the court shall consider ...." (emphasis added)).

Borchgrevink v. Borchgrevink , 941 P.2d 132, 139 (Alaska 1997).

See Smith , 73 P.3d at 1227 ("Because it is not clear to us which factors the superior court considered important or what other considerations were involved in reaching its decision, we remand for the superior court to make specific findings on all relevant factors as required by AS 25.24.150(c)."); Borchgrevink , 941 P.2d at 139 (stating that findings supporting custody decision "must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved").

See Borchgrevink , 941 P.2d at 139. Brett argues that the superior court's findings are inadequate because they do not spell out how the court weighed particular pieces of evidence when analyzing each best interests factor. But this argument misunderstands appellate review of custody orders. Once a court has identified the best interests factors relevant to its decision, we review the individual findings for clear error and how the factors were balanced for abuse of discretion. See Blanton v. Yourkowski , 180 P.3d 948, 951 (Alaska 2008).

Saffir v. Wheeler , 436 P.3d 1009, 1013 (Alaska 2019).

Mengisteab v. Oates , 425 P.3d 80, 85 (Alaska 2018) (quoting Moeller-Prokosch I , 27 P.3d 314, 316 (Alaska 2001) ).

Saffir , 436 P.3d at 1013 (alterations in original) (quoting Moeller-Prokosch v. Prokosch , 99 P.3d 531, 535-36 (Alaska 2004) ).

See, e.g. , id. at 1013-14 ; Mengisteab , 425 P.3d at 87 ; Andrea C. v. Marcus K. , 355 P.3d 521, 529 (Alaska 2015) ; see also AS 25.24.150(c)(5).

436 P.3d at 1014.

Id. ; see also Mengisteab , 425 P.3d at 87 (holding that "the court erred in failing to adequately consider the effect living in Alaska without his mother and siblings would have on continuity and stability in [the child's] life").

Blanton v. Yourkowski , 180 P.3d 948, 953 (Alaska 2008) (quoting AS 25.24.150(c)(5) ).

Veselsky v. Veselsky , 113 P.3d 629, 635 (Alaska 2005) (quoting Rooney v. Rooney , 914 P.2d 212, 217 (Alaska 1996) ).

See Blanton , 180 P.3d at 951 (stating that custody determination "will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or that the court abused its discretion").

Bruce H. v. Jennifer L. , 407 P.3d 432, 436 (Alaska 2017) (quoting Rego v. Rego , 259 P.3d 447, 452 (Alaska 2011) ).

Mengisteab , 425 P.3d at 85 (alteration in original) (quoting Moeller-Prokosch I , 27 P.3d 314, 316 (Alaska 2001) ).

See Silvan v. Alcina , 105 P.3d 117, 122 (Alaska 2005) ("When the superior court is faced with conflicting evidence, we do not re-weigh it. 'It is the job of the trial court, not the appellate court, to judge the credibility of the witnesses and to weigh conflicting evidence.' " (quoting Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska , 685 P.2d 1211, 1215 (Alaska 1984) )).

AS 25.24.150(c)(1).

Brett does argue that Amanda will be less able to provide for the children moving forward because of her plans to enter the workforce, but this argument is unpersuasive. Amanda clarified that she would only work part time to make time for the children's needs.

See Silvan , 105 P.3d at 122 (upholding trial court's finding despite conflicting evidence).

Odom v. Odom , 141 P.3d 324, 331 (Alaska 2006) (explaining that the "superior court may properly conclude that awarding custody to the primary caregiver will establish greater emotional stability for the purposes of AS 25.24.150(c)(5)" (citing Veselsky v. Veselsky , 113 P.3d 629, 635 (Alaska 2005) )).

See Blanton v. Yourkowski , 180 P.3d 948, 955 n.31 (Alaska 2008) ("Although awarding custody to [the mother] based on her strong emotional bond with [her daughter] may have also been a reasonable result, we cannot substitute our judgment for that of the superior court."); see also McDanold v. McDanold , 718 P.2d 467, 471 (Alaska 1986) (explaining that "[i]n a case as close as this one, the trial court must be given some latitude in making a decision").

AS 25.24.150(c)(6).

Silvan , 105 P.3d at 122 (Alaska 2005).

AS 25.24.310(c).

See id . ("Upon notification [that custody is at issue in a divorce], the court shall determine if a child's best interests need representation or if a minor or other child needs other services and shall make a finding on the record before trial.").

Small v. Sayre , 384 P.3d 785, 788 (Alaska 2016) (quoting D.J. v. P.C. , 36 P.3d 663, 668 (Alaska 2001) ).

Alaska R. Civ. P. 90.7(a).

Alaska R. Civ. P. 90.7(a) cmt.

Alaska R. Civ. P. 77(k)(1)(ii).

See Norris v. Norris , 345 P.3d 924, 928 (Alaska 2015) ; Brown v. State , 563 P.2d 275, 279 (Alaska 1977).

Hodari v. State, Dep't of Corr. , 407 P.3d 468, 472 (Alaska 2017) ; see also , e.g. , Bachner Co., v. Weed , 315 P.3d 1184, 1195 (Alaska 2013) ("Generally, a motion for reconsideration cannot be based on new information or arguments."); Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth. , 895 P.2d 497, 506 (Alaska 1995) ("We refuse to allow a motion for reconsideration to be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim.").

See Mattfield v. Mattfield , 133 P.3d 667, 675 (Alaska 2006) (affirming consideration of new evidence in motion for reconsideration when trial court had ensured that opposing party had opportunity to controvert new evidence).

See Engstrom v. Engstrom , 350 P.3d 766, 769 n.12 (Alaska 2015).