Cheryl ENIERO, Appellant,

v.

Steven BREKKE, Appellee.

No. S–12873.

Supreme Court of Alaska.

Sept. 12, 2008.

Dorothea G. Aguero, Anchorage, for Appellant.

Roy V. Williams, Eagle River, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Cheryl Eniero and Steven Brekke cohabited, had a daughter, and later separated. They received joint legal and physical custo-

dy of their daughter, but Eniero had the final say over educational and non-emergency medical decisions. Eniero filed a motion to modify custody so she could move to Oregon with their daughter. After a hearing, the superior court decided that Eniero's move was, in part, driven by the illegitimate motive of limiting Brekke's ability to be involved in their daughter's life. Analyzing the best interests of the child, the court concluded that it was in the daughter's best interests to stay with Brekke in Alaska should Eniero move to Oregon. Eniero appeals, claiming that the superior court employed the wrong legal standard when it assessed the legitimacy of her motives for the move and that the court abused its discretion in its custody determination.

We affirm because the superior court properly followed our precedent by addressing Eniero's illegitimate motive for the move in its analysis of the best interests of the child. We further conclude that the court did not abuse its discretion in reaching its custody determination.

## II. FACTS AND PROCEEDINGS

Cheryl Eniero and Steven Brekke cohabited for approximately four years and are the parents of a daughter, Miranda,[1] born in 1997. They separated in 1998 and entered into a stipulation regarding legal and physical custody of their daughter, child support, and visitation, among other things. In October 2000 Superior Court Judge Eric T. Sanders issued findings of facts and conclusions of law that largely memorialized the parties' agreement. The court also issued a decree of child custody incorporating the findings of fact and conclusions of law, awarding Eniero and Brekke joint legal and shared physical custody of their daughter, and making provisions for the assessment of child support obligations.

The custody arrangement generally provided that Brekke had Miranda during the weekends and parts of some Mondays and Eniero had Miranda during the work week and parts of some Sundays. Eniero received the right to choose Miranda's school, but both parents were granted access to her

school records. Eniero also received the final say over non-emergency medical decisions, but Brekke was entitled to provide his input on all major medical decisions.

Steven Brekke later married. Steven's wife, Heather, has a son from a prior relationship.

On July 15, 2006, Brekke filed a motion to modify custody. Superior Court Judge Sharon L. Gleason conducted a hearing and made oral findings of fact and conclusions of law in January 2007. The court was critical of the generally hostile communications between the Brekkes and Eniero. Determining that there was a substantial change in circumstances because, among other things, Miranda was no longer of pre-school age, the court granted a week-on, week-off custody arrangement. Due to hostility between Heather Brekke and Eniero, the court ordered that Heather Brekke not be present during custody transfers. The court further required that Steven Brekke and Eniero attend co-parenting counseling. The court directed that the only form of communication between the parties should be by e-mail, unless there was an emergency or if the parties otherwise agreed to other forms of communication. But the court retained the former system of legal custody which accorded Eniero the final say over some decisions. In February 2007 the court issued written findings and an order generally restating its oral findings and conclusions.

On June 14, 2007, Eniero filed a motion to modify child custody and support. Eniero explained that she wanted to move from Anchorage to Lakeview, Oregon. On August 20, 2007, Judge Gleason conducted a hearing regarding Eniero's motion.

At the hearing, Eniero testified that she wanted to move to Oregon to work with her parents in their property management business, assist her father in starting up an air charter service, and help her father manage the local airport. Eniero had no ownership interest in the businesses and there was no written business agreement. She explained that she had contemplated this move for a

---

1. The daughter's name has been changed to respect her privacy.

while and that the timing was right as she had recently retired from Alaska Airlines, her older daughters had finished high school, and she had finished her master's degree in business administration.

As to the property management business, Eniero testified that she and her parents were "exploring right now" to see "what's feasible" in terms of development plans, though no feasability studies had been conducted. As to the planned air charter business, Eniero explained that "we're just waiting for [FAA] certification" before the business could open. The business had one airplane. Eniero testified that "the plan is I will get paid." Her father, Bert Young, testified that he thought Eniero would be paid a minimum of $25,000 a year. He planned to pay Eniero this money from air charter contracts that he expected to receive after the business received FAA certification. This work was to be part-time and Eniero would have the opportunity to do unspecified freelance work. Until such time as she could be paid, Eniero explained that she would live off of the proceeds from the sale of her home in Anchorage.

Apart from moving to Oregon for new job opportunities, Eniero testified that many of her family members live near Lakeview. She explained that she could travel with her daughter on Alaska Airlines using flight benefits that were part of her severance package.

There was also testimony regarding failures in communication between Eniero and Brekke. Brekke signed Miranda up for some extracurricular activities without consulting Eniero. Eniero faulted Brekke for not informing her when Miranda was sick, such as when Brekke sent Miranda to school with a low-grade fever, Brekke sent Miranda to school with apparent flu-like symptoms, and Brekke transferred Miranda to Eniero when Miranda had a number of bug bites or a rash on her back (to document this last event, Eniero drew circles on her daughter's back in washable marker and then took photographs). Eniero also testified to difficulties talking on the phone with Miranda when Miranda was with Brekke, due to time limits effectively set by Brekke and Brekke's refus-

al to let Miranda use the phone in a private area. Brekke explained that Eniero's demands to speak with Miranda for an extended time on a nightly basis became unreasonable. Eniero also testified that Brekke took Miranda on out-of-town trips without providing an itinerary, as required by court order. Brekke responded that he thought the order only applied to out-of-state trips and, regarding one of his out-of-state trips, that he thought he gave Eniero enough information when he provided his mother's home telephone number.

In an oral decision the superior court analyzed the legitimacy of Eniero's planned move and Miranda's best interests should Eniero move. The court determined that Eniero's reasons for moving to Oregon were in part legitimate and in part illegitimate, motivated by the desire to limit Brekke's involvement in Miranda's life. In the best interests analysis, the court found that stability and continuity favored Miranda's staying in Anchorage and that Brekke was more willing to facilitate and encourage a close and continuing relationship between the other parent and the child. The court concluded that if Eniero decided not to move to Oregon, then the current custody situation would remain in place. But if Eniero moved to Oregon, Brekke would receive primary physical custody of Miranda. Miranda then would stay with Brekke during much of the school year and would be with Eniero during much of the summer. This oral decision was later reduced to written findings of fact and conclusions of law and a modified custody order.

Eniero appeals.

## III. DISCUSSION

### A. The Superior Court Properly Applied the Law.

The superior court had "concerns about the motives" for Eniero's planned move to Oregon. The court questioned the economic viability of Eniero's plan and further determined that Eniero was not required to move to Oregon to care for her parents. Though the court found two legitimate reasons for the move—Eniero's desire to live closer to her family and a desire to get away from

Brekke—the court concluded that "part of [Eniero's] motive [for the move] is a desire to limit Mr. Brekke's ability to be involved in his daughter's life."

■ Eniero contends that the superior court employed an improper standard when analyzing the legitimacy of the reasons for her move. Eniero argues that she was not required to "show more than a desire to get away from Alaska, be near family, or educate her child in another state." We independently review the relevant legal standards employed by the superior court.[2]

■ We have set forth a two-step approach for analyzing a custodial parent's desire to move out-of-state with a child.[3] First, the superior court must consider if reasons for the planned move are "legitimate." A move is legitimate "if it 'was not primarily motivated by a desire to make visitation ... more difficult.'"[4] Second, if the move is legitimate, the superior court must analyze the best interests of the child[5] while assuming that the planned move has already occurred.[6]

■ The "primarily motivated" standard used in the first prong of the test should not be read to suggest that any illegitimate reasons for a move must be ignored so long as those reasons are not the "primary motivation" for the move. While a court should not find a parent less willing to promote an open and loving relationship between the child and the other parent because of a legitimate move,[7] we have not suggested that the best interests analysis cannot take into account

how a move would exacerbate problems such as a parent's willingness to foster communication between the child and the other parent.[8] Indeed we have warned that "[p]arents must be cognizant that their plans to relocate may negatively affect maintenance of custody because of the impact of the move on the child."[9] Thus, even motives that are not the "primary motivation" for a move can be taken into account in the best interests analysis.

In this case, the superior court found two legitimate reasons for Eniero's move and did not find that the primary motivation for the move was illegitimate. The court proceeded to the best interests analysis. In the best interests analysis, the court explained that Eniero's illegitimate motive of limiting Brekke's involvement in Miranda's life was "a factor" in its determination.[10] We conclude that the court properly considered Eniero's illegitimate motives when considering the best interests analysis.

**B. The Superior Court Did Not Abuse Its Discretion when It Concluded that Miranda's Best Interests Would Be Served by Staying with Brekke If Eniero Moved.**

■ After determining that Eniero's planned move was legitimate—not "primarily motivated" by an illegitimate purpose—the superior court analyzed Miranda's best interests should the move occur. The court concluded that most of the statutory best interest factors did not favor either parent. It found that both parents were able to meet their daughter's needs, that Miranda was too

**2.** *Moeller–Prokosch v. Prokosch (Moeller–Prokosch I)*, 27 P.3d 314, 316 (Alaska 2001).

**3.** *McQuade v. McQuade*, 901 P.2d 421, 423–24 (Alaska 1995); *see also Moeller–Prokosch I*, 27 P.3d at 316.

**4.** *Moeller–Prokosch I*, 27 P.3d at 316 (quoting *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)).

**5.** AS 25.24.150(c).

**6.** *Moeller–Prokosch v. Prokosch (Moeller–Prokosch II)*, 53 P.3d 152, 156–57 (Alaska 2002); *Moeller–Prokosch I*, 27 P.3d at 317.

**7.** *Moeller–Prokosch II*, 53 P.3d at 155.

**8.** *Moeller–Prokosch I*, 27 P.3d at 316–17 ("[T]he best interests analysis necessarily will include assessing the impact of the parent's move on the child."); *Fardig v. Fardig*, 56 P.3d 9, 13 n. 12 (Alaska 2002) ("[T]he impact of any potential move may be taken into consideration by the court in assessing the best interests of the child.").

**9.** *Moeller–Prokosch I*, 27 P.3d at 317 n. 7.

**10.** Accordingly, Eniero's claims that the superior court abused its discretion because it did not find a "legitimate reason" for her move and that the court abused its discretion when it found that Eniero's move was "motivated primarily" by an illegitimate purpose are without merit.

young to form a parental preference, and that both parents love Miranda and that Miranda loves her parents. The court noted that Miranda has a stable life in Anchorage and determined that keeping Miranda in this environment was preferable to moving Miranda to a new environment. The court also found that Brekke demonstrated a greater willingness to facilitate and encourage a close and continuing relationship between Eniero and Miranda than Eniero had demonstrated with respect to the relationship between Brekke and Miranda. The court further determined that it would be easier for Eniero to visit Miranda in Alaska than Brekke to visit Miranda in Oregon due to Eniero's family and friends in Anchorage and Brekke's lack of family or friends in Lakeview. Eniero argues that the superior court abused its discretion when it concluded that the best interests analysis favored Miranda's placement with Brekke. We review custody determinations for an abuse of discretion.[11] We will overturn the superior court's factual findings only if those findings are clearly erroneous.[12]

### 1. The ability of each parent to meet Miranda's needs

Eniero argues that she demonstrated that she was better able to meet Miranda's needs than Brekke and that the superior court erred when it concluded that both parents were equally capable of meeting Miranda's needs. She points out that under the terms of the former custody agreement she had the ultimate power to make medical and educational decisions. She also contends that Brekke failed to notify her of Miranda's illnesses or ailments.

Eniero's arguments do not convince us that the superior court abused its discretion. With regard to her "final say" over decisions, Eniero ignores the terms of the prior custody order providing Brekke a voice in any major decisions. And, given the week-on, week-off shared physical custody arrangement, Brekke regularly interacted with Miranda

and had sufficient opportunity to learn of her needs.

Eniero's claim about the lack of communication from Brekke to Eniero about Miranda's illnesses largely ignores that the superior court addressed this issue. The court concluded that both parents defined illness differently and that they both had different approaches for treating illnesses. The court found that both approaches were valid. Though Eniero believed that Brekke should have told her when Miranda was sick, the court determined that communication, while probably appreciated, was not required given the minor nature of Miranda's ailments.

### 2. Stability and continuity

The superior court concluded that Miranda has had a stable life in Anchorage and that it was desirable to maintain continuity in Miranda's life. The court noted that "[o]ften when parents are conflicted the school can be the one safe harbor for kids to go to." The court also found that "[m]aintaining the same home at dad's house is a benefit as well."

Eniero argues that the superior court erred when it found that it was more desirable for Miranda to remain in Anchorage. While the continuity of care factor examines both geographic and relational stability,[13] Eniero argues that the court placed too much weight on geographic stability. Brekke responds that considerations of both emotional and geographic continuity favored him.

Eniero claims that Oregon would provide a stable environment for Miranda. She found a good school in Lakeview. Miranda has relatives in Oregon. The superior court did not contradict these arguments, though the court did note that there was little testimony about "how anxious people in the community of Lakeview are to have Miranda there except for [Miranda's] cousin."

Eniero further contends that Brekke would not provide a stable environment for Miranda. She claims that Brekke would have less time for Miranda than she would

---

**11.** *McQuade,* 901 P.2d at 424 n. 9.

**12.** *Rodvik v. Rodvik,* 151 P.3d 338, 343 (Alaska 2006).

**13.** *Meier v. Cloud,* 34 P.3d 1274, 1279 (Alaska 2001).

and that Miranda would be in daycare, or in Heather Brekke's care, if she stayed in Anchorage. The court recognized that Eniero, presumably due to her part-time work schedule, was able to structure her schedule around Miranda's schedule. But the court accorded more weight to stability provided by Miranda's current environment and determined that it was desirable to maintain continuity by letting Miranda stay in this environment. We are not convinced that the superior court's determination must be overturned.

The court did not place too much weight on geographic stability. While the court weighed geographic stability, the court also noted that whatever decision it reached would put stress on Miranda. Given this stress, the court found that providing a "safe harbor" of familiarity, such as Miranda's school in Anchorage, would be best for Miranda. While keeping Miranda in familiar surroundings would typically emphasize geographic continuity,[14] the court took relational stability into account and did not abuse its discretion.

### 3. Facilitating and encouraging a close and continuing relationship between Miranda and the other parent

The superior court noted that "there continue to be challenges" with communication between the parents. The court reviewed and commented on much of the testimony. It stated that the parents should allow private phone conversations between Miranda and the other parent. But the court agreed with Brekke's decision to limit Eniero's phone calls. The court criticized Eniero for not having Miranda call Brekke during a three-week trip to Oregon. With regard to medical issues, the court concluded that Brekke was not required to inform Eniero of Miranda's minor ailments but suggested that notification would be appreciated. The court criticized Eniero for drawing circles in marker on Miranda's back to document Miranda's

rash or bug bites, especially when the rash or bites could be treated at home and healed in a short period of time. Weighing this evidence, the court concluded that Brekke "demonstrated that he's doing a slightly better job" in facilitating and encouraging a close relationship between Miranda and the other parent than Eniero. It noted that Dr. David Wilcox, who served as Eniero and Brekke's counselor for court-ordered co-parent counseling and later continued to counsel Brekke individually, testified that Brekke demonstrated a greater willingness to have open communication. The court also noted that, despite Eniero's professed scheduling flexibility when it came to caring for Miranda, Eniero was unable to clear her schedule for counseling commitments with the first co-parenting counselor they selected, requiring that they find a counselor who had Friday appointments. The court suggested that this demonstrated that communication with Brekke "was pretty darn low on the priority list for Ms. Eniero. And that was troubling to me."

Eniero argues that the superior court accorded too much weight to the testimony of Dr. Wilcox. Dr. Wilcox testified that Brekke wanted to have more open communication with Eniero, but that Eniero wanted limited communication. The superior court found Dr. Wilcox's testimony "persuasive" regarding the parties' level of cooperation. Eniero argues that a court order stated that communication should primarily be by e-mail, meaning that her desire to limit communication should not have been held against her. But the court, when making the order, stated that e-mail was the form of communication "unless both [parties] agree otherwise." Given Eniero's planned move, the superior court reasonably determined that Eniero's reluctance to move beyond e-mail communication could hamper Brekke's relationship with Miranda.[15]

Eniero points out that the superior court did not mention that Brekke failed to attend

---

14. Notably, however, in *Vachon v. Pugliese*, we concluded that the continuity and stability factor favored the parent who left Alaska. 931 P.2d 371, 380 (Alaska 1996); *see also Meier*, 34 P.3d at 1279.

15. We have recognized that communication is an important consideration when one parent is planning to leave the state. *Silvan v. Alcina*, 105 P.3d 117, 121 & n. 9 (Alaska 2005).

one of the court-mandated counseling sessions. But Dr. Wilcox explained that this was a scheduling error and that Brekke merely arrived one hour later than he should have. The superior court's implicit acceptance of this testimony was within its discretion.

Eniero also contends that the superior court's finding that communication with Brekke was a "low priority" for Eniero was clearly erroneous. Eniero asserts that her job at the time prevented her from having counseling sessions on any day of the week but Friday. Apart from Eniero's failure to provide citations to the transcript that support this claim, the superior court could have reasonably rejected her contention based on Eniero's professed flexibility in her schedule to look after Miranda. This is especially true because Eniero's employment was part-time.

Eniero finally claims that there are many examples of Brekke's "animosity" toward her. She cites Brekke's decision to enroll Miranda in extracurricular activities without telling her, Brekke's failure to provide complete itineraries of his trips with Miranda, Brekke's refusal to approve Miranda's passport application, Brekke's limitation of phone calls between Miranda and Eniero, and Heather Brekke's alteration of Miranda's school registration form removing Eniero's contact information.

The superior court discussed many of these issues and largely rejected Eniero's characterization of the testimony. As Brekke points out, the superior court found that Eniero's frequent phone calls with Miranda "were stressful" and that the steps Brekke took to limit Eniero's phone calls were "appropriate." Brekke likewise had an explanation for the changed school registration records; the records were changed for the upcoming school year as a precautionary registration in case Miranda stayed in Anchorage after Eniero moved to Oregon. The superior court also changed the itinerary requirement, explaining that a parent only needed to file an itinerary for air travel.

As Brekke argues, there is also evidence suggesting that Eniero failed to facilitate communication between Miranda and Brekke. For example, Brekke testified that phone calls he made to Miranda when she was with Eniero were never returned. The superior court also faulted Eniero for not having Miranda call Brekke during a three-week trip to Lakeview.

Finally, based on the weaknesses of Eniero's reasons for the move, the superior court could permissibly infer an unstated, illegitimate motive of limiting Brekke's involvement in Miranda's life. Given the lack of a business agreement, the lack of feasibility studies for any real estate development, and that Eniero's salary was dependent on an air charter business with one airplane that had yet to receive FAA approval or any contracts, we conclude that the court did not abuse its discretion in evaluating Eniero's move.

### 4. Ease of visiting Miranda

As an additional consideration, the superior court found that it would be more difficult for Brekke to visit Miranda in Lakeview during the school year than for Eniero to visit Miranda in Anchorage during the school year. The court reasoned that Eniero had family or friends in the Anchorage area but that Brekke did not have family or friends in the Lakeview area. The court thus concluded that Eniero could be a more active participant in Miranda's life during the school year if Miranda was with Brekke than Brekke could be in the alternate situation.

Eniero argues that the superior court's conclusion is clearly erroneous. Eniero contends that she has no family in Anchorage other than her daughters, who live with her ex-husband. She argues that the court erred when it assumed that Eniero could stay with her ex-husband in Anchorage.

Eniero's argument requires a selective reading of the superior court's findings. The court stated, "And Ms. Eniero would have the benefit if she came up here to be able to stay with family or friends and—or, have family or friends here and be able to really be a more active participant throughout the school year, as well as in the summer, with her child." The superior court's reasoning is acceptable. Eniero testified that she got along well with her former husband who lives

in Anchorage. Eniero's other daughters still live in Anchorage. Brekke testified that he liked Eniero's former husband. No testimony demonstrated that Brekke had connections to Lakeview. While the superior court did not appear to weigh this factor heavily, it was appropriate to note the relative difficulty each parent would have being involved in Miranda's life should Miranda live with the other parent.

## IV. CONCLUSION

We AFFIRM the decision of the superior court.