*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRIAN OTT, | ) | |
| | ) | Supreme Court No. S-17551 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-06688 CI |
| v. | ) | |
| | ) | O P I N I O N |
| HALEY RUNA, | ) | |
| | ) | No. 7450 – May 8, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: Joshua P. Fink, The Law Office of Joshua P. Fink, LLC, Anchorage, and Randi R. Vickers, Rockville, Maryland, for Appellant. Notice of nonparticipation filed by Jacob A. Sonneborn, Law Office of Jacob Sonneborn, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Parents separated when their child was not yet two years old. Following contentious divorce proceedings, the superior court awarded equally shared physical custody and joint legal custody of the child. After trial, but before the court had issued its child custody decision, the mother filed a motion to relocate with the child. The court

declined to address the relocation motion in its custody decision. Following evidentiary hearings on the relocation motion, a different judge awarded the mother primary physical custody. The father appeals, arguing that the court made several errors when making its custody modification decision. Seeing no error, we affirm the decision.

## II.    FACTS AND PROCEEDINGS

### A.    Background Facts And Pretrial Proceedings

Brian Ott and Haley Runa were married in September 2014 in North Carolina. They lived in Washington for a time then moved to Anchorage, where their daughter was born in September 2015. Brian and Haley separated in January 2017; Haley moved into a basement apartment in their home, and Brian continued living in the main house. They began an informal 50/50 custody arrangement, with exchanges happening every three days.

Haley filed a divorce complaint in May, seeking primary physical custody. Brian filed an answer in August, requesting shared physical custody. Around this time Haley refused to return the daughter to Brian's custody when it was time for his three-day rotation. Brian moved to reinstate their informal custody arrangement; Haley opposed, citing "multiple acts of domestic violence" and contending that Brian "should be allowed only supervised visitation" until he completed a domestic violence intervention course and addressed his substance abuse issues. The superior court entered a temporary interim custody order in late August, reinstating the informal 50/50 custody arrangement on the conditions that Brian's custody be supervised by his sister at all times, that he refrain from consuming alcohol during his custody time, and that he not have any direct contact with Haley regarding custody exchanges.

Brian and Haley reached an interim custody agreement, and the court incorporated it in a September interim order. Under that agreement, Haley had sole legal and primary physical custody; Brian had visitation one week monthly with one additional

three-day period monthly. Brian agreed to have an alcohol assessment, follow any treatment recommendations by the assessor, and undergo random urinalysis testing during his one-week visitations and on the final day of every three-day custodial period. Although not mentioned in the interim order, Brian later completed a 36-week domestic violence intervention program and a 12-hour co-parenting course. The interim order granted Haley possession of the marital home beginning in November.

B.      **Trial Proceedings And Order**

The superior court held evidentiary hearings over four days in July and August 2018. Haley noted in her trial brief that she had begun considering moving out of state, and she requested "a ruling that she be allowed to do so without a return to court." The court noted on the trial's final day that it would not be considering the possibility of Haley relocating.

In December, after the trial concluded but before the superior court issued its custody decision, Haley filed a motion to relocate with the daughter. Haley indicated that she "desire[d] to leave the state to move to Washington where her boyfriend reside[d]" and that she "[did] not feel that she [could] wait longer to begin the process of allowing for a determination of [her daughter's] best interests given her intent to relocate." In an attached affidavit, Haley attested that she had a boyfriend who owned a home in Washington and lived there with his son; that Haley and the daughter would live with him; that he "puts a lot of effort into [the daughter] and has taken care of her when [Haley has] been at work," and the daughter "thinks he's great"; that Haley's boyfriend "offered and is comfortably able to financially support [Haley] until [she is] able to find a job"; that she had identified possibilities for work; that she had investigated preschools and identified an option near her boyfriend's home; and that she had begun establishing a community in his area, including his friends and family.

In March the superior court issued its final decision without addressing Haley's motion to relocate. The court found that Brian "has a history of domestic violence" and that he therefore was subject to the statutory domestic violence presumption.[1] But the court also found that Brian overcame the presumption by completing a domestic violence intervention program and refraining from abusing substances.[2] The court found that the evidence did not show by a preponderance that Brian abused alcohol, that he was in need of alcohol abuse treatment, "or that his use of alcohol will impact his ability to parent sober[ly] and safely."

The superior court's other findings relating to custody addressed most of the AS 25.24.150(c) best interests factors.[3] The court found that love and affection

---

[1]    AS 25.24.150(g) provides that a parent with a history of domestic violence "against the other parent, a child, or a domestic living partner" may not be awarded sole or joint legal or physical custody.

[2]    *See* AS 25.24.150(h) (establishing conditions under which parent may overcome domestic violence presumption).

[3]    AS 25.24.150(c) provides that:

In determining the best interests of the child the court shall consider:

    (1)  the physical, emotional, mental, religious, and social needs of the child;

    (2)  the capability and desire of each parent to meet these needs;

    (3)  the child's preference if the child is of sufficient age and capacity to form a preference;

    (4)  the love and affection existing between the child and each parent;

    (5)  the length of time the child has lived in a stable,

(continued...)

existed between each parent and their daughter and that both parents "ha[d] the capability and desire to meet her needs." The court also found that "remarkably," each parent had "demonstrated a willingness and ability to facilitate and encourage a close relationship between [the daughter] and the other parent." The court noted that "there were a few communications where [Brian] was being difficult or petty" and that he occasionally would "continue to initiate direct exchanges or try to engage in settlement talks" even after Haley had requested they not have direct contact. Despite these actions, Haley still "continued to demonstrate reasonableness and cooperation."

The superior court concluded that, based on the statutory best interests factors, a 50/50 physical custody arrangement was in the child's best interests. The court

---

[3]      (...continued)
satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

ordered shared legal custody but, in the event of a disagreement over important decisions about the child, Haley would have final decision-making authority.

### C.    Post-Trial Proceedings And Appeal

Following the March decision, Haley and Brian's case was reassigned to a different superior court judge. The court scheduled an April evidentiary hearing on the relocation issue. The relocation hearing spanned three days in April and May, and only Haley and Brian testified.

Haley testified that her affidavit statements continued to be true and that she had made additional employment contacts. She testified that if she were to move to Washington, she could encourage a relationship between Brian and the daughter by facilitating electronic communications, accommodating him if he wished to visit in Washington, and facilitating trips for the daughter to visit in Alaska. She testified that Brian had been uncooperative and inflexible in custody scheduling and exchanges since the August 2018 evidentiary hearing and that "he doesn't do things prioritizing what is best for [our daughter]," but he instead acts in ways intended "to get back at [Haley]." Haley also testified that custody exchanges had become very difficult, that the daughter appeared very upset during exchanges, and that Haley believed Brian was trying to manipulate the daughter to feel that returning to her mother was a bad thing. Haley further testified that she had asked to switch to only indirect exchanges but that Brian insisted on continuing direct exchanges. On cross-examination Haley testified that she had been in contact with firms in Washington about potential jobs, that her boyfriend had offered to financially support her until she found a job but she also had savings, that she had begun building a community in Washington, and that she believed she could be a better mother by living with a supportive partner.

Brian disputed much of Haley's testimony regarding their exchanges. Brian also testified at length about his relationship with the daughter, how he supported her

emotionally and financially, and about the social support his community and family in Anchorage provided the daughter.

In July 2019 the superior court issued a decision on Haley's motion to relocate. The court found Haley's motivation for relocating to Washington was legitimate, finding Brian had "offer[ed] nothing concrete to suggest that Haley is proposing to move in 'order to prevent Brian's relationship with [the daughter].'" The court found that Haley was "motivated to start a new life for herself plain and simple."

The superior court conducted a thorough analysis of the AS 25.24.150(c) best interests factors. The court did not make detailed findings about factors (1) (child's physical, emotional, mental, religious, and social needs), (3) (child's preference for one parent), (4) (child's love and affection for each parent), (7) (evidence of domestic violence), or (8) (substance abuse), noting that these factors were neutral and did not favor one parent over the other.[4] For factor (2), the court found both parents had the capability and desire to meet the child's needs, but it also found persuasive Haley's argument that Brian was "putting on a show" for the court. The court found that Brian's

---

[4] The court noted under factor (7) that the previous judge had found Brian has a history of domestic violence but met his burden to overcome the domestic violence presumption and that this factor therefore was neutral. Although in this case the outcome would not change, we note that the best interests factor found at AS 25.24.150(c)(7) is distinct from the domestic violence presumption described at AS 25.24.150(g). A parent may overcome the domestic violence presumption, but a history of domestic violence still may be a relevant factor in determining which custody configuration is in the child's best interests. *See Limeres v. Limeres*, 320 P.3d 291, 299 (Alaska 2014) ("Evidence of domestic violence is important to child custody in two statutory contexts. First, the court must consider 'any evidence of domestic violence . . . in the proposed custodial household' in its best interests determination. Second, if the court finds that a parent has a history of perpetrating domestic violence, a rebuttable presumption arises against granting that parent custody or unsupervised visitation." (citations omitted) (quoting AS 25.24.150(c)(7))).

testimony and demeanor "suggest[ed] that he [was] trying too hard to make a good impression" and "question[ed] whether Brian would be fully capable and desirous of being a 'full-time' [d]ad if Haley were in Washington." On the whole, the court found this factor favored Haley.

Regarding the length of time the child has spent in a stable environment and the desirability of continuity, factor (5), the court found stability for the child in Anchorage and, if restricted to geographic location, that this factor would "slightly favor" Brian. But the court noted that this factor "also considers relational continuity and stability" and that "[Haley's] relationship appears . . . to be more stable and continuous than [Brian's]." The court found that, although the child would be substantially impacted by either custody choice, this factor favored Haley.

As to each parent's willingness and ability to allow a close and continuing relationship between the child and the other parent, factor (6), the court found that this factor "equally disfavored" both parents, citing both Brian's "tendency toward manipulative behavior" and Haley's "narrow[] focus on Brian's shortcomings." The court did not find, as Brian contended, that Haley had been "making a concerted effort to not allow him to be part of [the daughter's] life," but the court noted concern about how Haley would behave if she had primary custody.

The court concluded that if Haley were to move to Washington and Brian were to stay in Anchorage, the child's best interests would be met by Haley having primary physical custody during the school year. The court granted Brian custody for up to eight weeks during the summer, initially broken into two four-week segments separated by a four-week segment with Haley. The court declined to modify legal custody, continuing the order that the parents share legal custody with Haley having final say in the event of a disagreement.

Brian appeals the superior court's order. He contends that the court erred by failing to give "substantial deference" to the original custody decision, specifically by impermissibly reweighing evidence regarding his capability and desire to meet the child's needs and his willingness to foster a relationship between the child and Haley. Brian also contends that the court erred by failing to consider Haley's alleged "lingering illegitimate reasons" for moving to Washington, both in its determination on the threshold legitimacy question and in its best interests analysis. Finally, Brian contends that the court erred by improperly weighing the emotional and geographic stability factor, in particular by failing to consider the child's ties to her extended family in Anchorage. Haley did not participate in this appeal.

## III. STANDARD OF REVIEW

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests. We will set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[5] "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[6]

"Abuse of discretion is established if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated

---

[5]     *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)).

[6]     *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007)).

factors, or assigned disproportionate weight to particular factors while ignoring others."[7] "A factual finding is erroneous if, 'based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made.' "[8] We review de novo whether the superior court applied the correct legal standard, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

## IV. DISCUSSION

A parent's anticipated relocation constitutes a substantial change in circumstances sufficient to justify considering a physical custody modification.[10] Evaluating a motion to relocate with a child requires a two-step analysis.[11] The superior court first must assess the legitimacy of the move, and in particular whether the move is "primarily motivated by a desire to make visitation more difficult."[12] Once the court determines the reasons for the move are legitimate, the court next considers the child's

---

[7] *Joy B. v. Everett B.*, 451 P.3d 365, 368 (Alaska 2019) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[8] *Bruce H.*, 407 P.3d at 436 (quoting *Rego*, 259 P.3d at 452).

[9] *Id.* (quoting *Rego*, 259 P.3d at 452) (alteration omitted).

[10] *See id.* at 435 ("[B]ecause [the mother] was planning to relocate with their son, the court determined she had alleged a substantial change in circumstances."); *Nelson v. Nelson*, 263 P.3d 49, 52-53 (Alaska 2011) ("Though the change-of-circumstances rule is 'designed to discourage discontented parents from continually renewing custody proceedings,' parents should not be discouraged from planning ahead and seeking to modify custody arrangements in advance of an anticipated move." (quoting *Nichols v. Mandelin*, 790 P.2d 1367, 1372 (Alaska 1990))); *see also Judd v. Burns*, 397 P.3d 331, 341 & n. 35 (Alaska 2017) (noting that although "an out-of-state move is a substantial change for physical custody purposes, it is not necessarily a substantial change for legal custody purposes").

[11] *Bruce H.*, 407 P.3d at 437.

[12] *Id.* (quoting *Rego*, 259 P.3d at 453).

best interests, with no presumption favoring either parent.[13] The child's best interests are evaluated based on the nine factors identified at AS 25.24.150(c).[14] "The relocating parent secures primary [physical] custody by showing that living with that parent in a new environment better serves the child's interests than living with the other parent in the current location."[15]

## A. The Superior Court Applied The Correct Legal Standard When Determining The Legitimacy Of Haley's Relocation.

Brian contends that the superior court "misapplied the legitimacy standard" by "focusing only on Haley's primary motivation and failing to address her mixed motives." On multiple occasions we have held that a move is legitimate "if it is not *primarily* motivated by a desire to make visitation more difficult."[16] Brian cites *Eniero v. Brekke*[17] for the proposition that a court must "apply a mixed motives analysis to the legitimacy question," but in that decision we repeated that a move is considered legitimate if it is not primarily motivated to make visitation more difficult.[18]

The superior court found that Haley "was candid and forthright in her testimony" and that her motivation to move "seems clearly designed to foster a new life for herself . . . with her new boyfriend." The court concluded that "Haley's motivation

---

[13]    *Id.*

[14]    *See supra* note 3.

[15]    *Rego*, 259 P.3d at 453.

[16]    *See id.*, (emphasis added) (citing *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001)); *see also Bruce H.*, 407 P.3d at 437 ("We do not require the moving parent to prove a compelling reason to move so long as the primary motivation is not limiting visitation with the other parent.").

[17]    192 P.3d 147 (Alaska 2008).

[18]    *Id.* at 150.

for the move is legitimate." Based on our clearly established legal standard, the court did not err when making this determination.

B.     **The Superior Court Did Not Fail To Consider Secondary Motives In Its Best Interests Analysis.**

Brian contends that the superior court also erred by failing to consider Haley's alleged motive to limit his visitation with the daughter in its best interests analysis.

Brian is correct that we have held secondary "illegitimate" reasons for a move need not be ignored for purposes of the best interests analysis simply because the primary motivation was found to be legitimate.[19]  But the superior court considered whether Haley's move might be partly motivated by limiting the daughter's contact with Brian.  The court found Haley's testimony "candid and forthright," and it found Brian's "vague assertions" about her illegitimate motivations were without merit.  The court also expressly found that Haley was not, as Brian claimed, "making a concerted effort to" exclude Brian from the daughter's life.

The record supports the superior court's findings.  In Haley's affidavit and testimony, she provided detailed descriptions of her relationship with her boyfriend; her job prospects in Washington; her investigation into school quality and identification of a promising preschool near her boyfriend's house; and the community she had begun to establish in the area.  Only twice did Haley's testimony raise the possibility that she wished to isolate the daughter from Brian.  First, during a custody hearing prior to the divorce trial when discussing Brian's domestic violence history, Haley testified that she did not want the daughter "to be raised knowing that it's okay to treat people in an

---

[19]     *See id.* ("[W]e have not suggested that the best interests analysis cannot take into account how a move would exacerbate problems such as a parent's willingness to foster communication between the child and the other parent.").

abusive way" and did not "want her to learn to be abused, basically." Haley continued: "I don't want my daughter to grow up thinking that. I don't want her to think that this is okay. I don't want her to be exposed to these behaviors." Later, during the relocation hearing, Haley testified that she "think[s] he's controlling and manipulative" and that she is "concerned about what he's going to do to [the daughter]."

We have found an illegitimate motive after a parent "repeatedly changed her plans" and "did not provide contact information or adequate notice of her move to the court";[20] we considered the parent's repeated unwillingness to support a relationship between a child and the other parent, such as a history of cancelling scheduled visitations, as evidence of an improper motive.[21] We also have inferred an improper motive from a parent's inability to articulate strong reasons for moving and an underdeveloped employment plan.[22] We have not inferred an improper motive merely from one parent's hostility toward the other or from one parent's fear of the other parent's influence on a child, and we decline to do so here.

The superior court considered all the evidence when it declined to find that Haley deliberately sought to limit Brian's ability to see the daughter. And the court expressly considered whether each parent would facilitate a relationship between the

---

[20]     *Mengisteab v. Oates*, 425 P.3d 80, 86 (Alaska 2018).

[21]     *Id.*

[22]     *See Eniero*, 192 P.3d at 153 (imputing illegitimate motive to mother who planned to work for her father's air charter business, which owned only one airplane and had not secured any contracts or FAA approval). Brian contends that Haley's not yet having secured employment is analogous to Eniero's ill-conceived employment plan. But Haley testified that she had savings to support herself, that her boyfriend had offered financial support, and, most importantly, that she had a career with a long history of stable employment and already had established a number of job prospects. This argument is meritless.

child and the other parent, finding that there were concerns about both parents; this seems to be the more appropriate focus of Brian's argument. Because the record supports the court's finding that Haley was not motivated by "illegitimate" secondary motives, the court did not err by "failing to use the mixed motives analysis" in its best interests determination.

**C.  The Superior Court Did Not Fail To Give Substantial Deference To The Original Custody Order.**

We have held that a superior court considering a custody modification request "must give deference to the findings made in the original custody determination."[23] This rule is intended to prevent a court changing a custody determination based solely on reweighing the original custody proceeding evidence.[24] Brian contends that the court impermissibly reweighed evidence regarding the capability and desire of each parent to meet the daughter's needs, given the original findings that "love and affection exists between [the child] and both of her parents" and that both parents "have the capability and desire to meet her needs." Brian suggests that in light of these findings the court erred by finding the "capability and desire of each parent to meet [the daughter's] needs" factor favored Haley.

The superior court determined that this factor favored Haley in part because Brian's "testimony and demeanor in court" indicated he was "putting on a show" and "trying too hard to make a good impression." Apparently on this basis, the court questioned "whether Brian would be fully capable and desirous of being a 'full-time' [d]ad if Haley were in Washington." Nothing in these findings indicates that the court was re-evaluating the divorce trial evidence. Unlike our *Gratrix v. Gratrix* finding that

---

[23]  *Gratrix v. Gratrix*, 652 P.2d 76, 81 (Alaska 1982).

[24]  *Id.*

-14-                                                    7450

the court had made no mention of the previous custody determination and had reweighed evidence of a parent's "lifestyle and general social mores,"[25] in this case the court's finding appears to be based on its perception of Brian's credibility.[26]

Brian also contends that the superior court failed to give sufficient weight to the original findings regarding his fitness as a father. As in *Gratrix*, in this case "there was no discussion" of the findings in the previous order relating to Brian's desire and capability to meet the daughter's needs. Brian's argument fails, however, because the original finding that he had the capability and desire to meet the daughter's needs is not inconsistent with the court's finding that this factor nonetheless favored Haley. As we have previously noted, courts making best interests determinations in cases involving a parent's relocation "must assume that the legitimate move will take place."[27] Although courts consider the same best interests factors as in custody cases not involving relocation, the inquiry is decidedly different. In cases involving a parent's relocation to distances too great for shared custody to be practical, the court *must* grant primary physical custody to one parent.[28] Courts often find both parents sufficiently satisfy the

---

[25] *Id.* at 81-82.

[26] *Cf. Bruce H. v. Jennifer L.*, 407 P.3d 432, 437 (Alaska 2017) ("When a legitimacy finding is based on a court's assessment of a parent's credibility, we 'give it particular deference.' " (quoting *Kristina B. v. Edward B.*, 329 P.3d 202, 214 (Alaska 2014))).

[27] *Id.* at 437 (quoting *Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011)).

[28] *See Rego*, 259 P.3d at 453 ("The relocating parent secures [primary] physical custody by showing that living with that parent in a new environment better serves the child's interests than living with the other parent in the current location."). We use "primary" and "shared" custody in their generic meanings here, without regard to the formulaic meanings of the terms in Alaska Civil Rule 90.3(a)-(b) (defining various custody forms for child support calculations).

best interests factors to warrant joint custody, but a court adjudicating a case involving one parent's relocation is required to determine which parent *better* satisfies those factors. It therefore is entirely consistent for a court to order joint custody when both parents live in the same community, but nonetheless find that factors favor one parent over the other if one parent chooses to relocate.

That situation was precisely what the superior court faced in this case. The court found that "both parties have the capability and desire to meet [the daughter's] needs,"[29] but, expressing some uncertainty about Brian, the court found that this factor favored Haley. Similarly, the court found that the child "would be substantially impacted by either custody choice" but that this factor nonetheless favored Haley. The court concluded that "[s]o long as the parties both live in the same geographical area, then they should continue to share physical custody 50/50 as ordered," but that "[u]pon [Haley's] move to Washington, [Haley] will be awarded primary physical custody."

### D. The Superior Court Did Not Abuse Its Discretion By Failing To Consider The Importance Of The Child's Extended Family Ties In Anchorage.

Finally, Brian contends that the superior court erred by failing to sufficiently consider the emotional stability extended family in Anchorage provided the daughter. Brian notes our recent *Saffir v. Wheeler*[30] decision, "acknowledg[ing] that the child's relationship with extended family could be properly considered as part of [the emotional and geographic stability factor]."[31] Brian contends that "[i]f a relationship can be considered, then it is relevant, and failure to consider it is error."

---

[29]  *See* AS 25.24.150(c)(2).

[30]  436 P.3d 1009 (Alaska 2019).

[31]  *Id.* at 1013 n.12.

This argument fails because the superior court considered all the available evidence, including testimony about the child's community of family and friends, when it concluded that "[t]he impact on [the child] of separating her from [Haley] appears to be greater (all other things being equal) than the impact of separating [her] from [Brian]." Having considered the evidence before it, the court did not err by finding this factor favored Haley.

## V. CONCLUSION

We AFFIRM the superior court's order modifying custody.