NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SASHA ZIEGLER, ) | |
| ) | Supreme Court No.: S-18407 |
| Appellant, ) | |
| ) | Superior Court No.: 3AN-19-10742 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| KIDUSE ATSBEHA, ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 1940 – December 21, 2022 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Sasha Ziegler, pro se, Wasilla, Appellant. No appearance by Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

I.   **INTRODUCTION**

A mother appeals a custody modification order giving the father primary physical custody of their child and allowing him to relocate out of state with their child. Because the superior court applied the correct legal standard, entered no clearly erroneous factual findings, and did not abuse its discretion, we affirm the superior court's decision. But we remand for the superior court to further consider its visitation framework for the three-year-old child.

---

*   Entered under Alaska Appellate Rule 214.

## II.    FACTS AND PROCEEDINGS

Kiduse Atsbeha and Sasha Ziegler are the parents of a daughter born in August 2019.  In October Kiduse sought a formal custody determination, and both parties were self-represented throughout the proceedings.  After a July 2020 custody hearing the superior court awarded the parties joint legal custody.  Finding that Kiduse was "better suited to provide for" the child's needs, the court awarded him primary physical custody.  The court awarded Sasha visitation with "the intent of reaching a shared physical custody arrangement," including a plan for increased visitation if she stabilized her housing situation.  The parties subsequently filed a series of enforcement and modification motions.

In February 2022 Sasha sought sole legal custody; she asserted that Kiduse had not been allowing her to talk with the child and that custody with her was in the child's best interests because it would allow her and the child to bond.  Kiduse responded that full custody with him was the "best thing" for the child.  He also notified the court that he wished to move out of state with the child.  The court informed Kiduse that relocating the child out of state would qualify as a change in circumstances requiring court approval.  Kiduse sought custody modification, explaining why he believed it was in the child's best interests to relocate with him.

In March the court held a hearing to address Sasha's motion to modify custody and Kiduse's request to relocate with the child.  The court questioned each party about the child's routine in Alaska.  The court questioned Kiduse about his plans to relocate and what the child's routine would be if she relocated with him.  He testified to having plans for work and daycare and to having family members who would help him care for the child.  The court also heard testimony about each parent's substance use, home safety, and capability and desire to meet the child's needs.

The court found that Kiduse's move out of state was not primarily motivated by a desire to decrease Sasha's time with the child.  The court then determined that it was in the child's best interests to award Kiduse primary physical

custody and allow him to relocate with the child. The court ordered that until Kiduse moved to Texas, the existing custody arrangement would remain in place. The court's written order outlined Sasha's visitation rights after Kiduse and the child moved to Texas. Although the child was not yet three years old, the court based the visitation schedule on the local Texas school's calendar. Sasha sought reconsideration, but the court denied her motion.

Sasha, self-represented, appealed the superior court's custody modification order. Kiduse has not participated in this appeal.

## III. STANDARD OF REVIEW

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests. We will set aside the . . . court's best interests determination only if the . . . court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[1] "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[2]

## IV. DISCUSSION

### A. Legal Standard For Evaluating The Move

"Evaluating a motion to relocate with a child requires a two-step analysis."[3] The superior court must first determine if legitimate reasons support the

---

[1] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[2] *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Child.'s Servs.*, 174 P.3d 217, 222 (Alaska 2007)).

[3] *Ott v. Runa*, 463 P.3d 180, 185-86 (Alaska 2020).

move before then evaluating the child's best interests under the statutory factors.[4]  The moving parent does not have to provide "a compelling reason to move so long as the primary motivation is not limiting visitation with the other parent."[5]

The superior court correctly began the two-step evaluation by asking "whether [Kiduse's] move is legitimate and not intended to impede [Sasha's] visitation or custodial time."  The court relied on testimony that his family planned to move out of state.  Based on testimony that Kiduse lives with his family and that they are his and the child's primary support system, the court found "no basis . . . to believe that he is moving only or primarily to reduce Sasha's time with her daughter."

Nothing in the record suggests that the superior court's factual findings were clearly erroneous.  Because the superior court correctly applied the two-step analysis to facts supported by the record, we affirm the finding that Kiduse's proposed move out of state was legitimate.

## B.    Best Interests Factors

Once the superior court found that Kiduse's move was legitimate, it was required to compare the child's life remaining in Alaska with Sasha to the child's life living with Kiduse if he moved[6] and then to evaluate the child's best interests in each situation by considering nine statutory factors.[7]  Because Kiduse was moving out of

---

[4]    *Id*.; AS 25.24.150(c).

[5]    *Bruce H. v. Jennifer L.*, 407 P.3d 432, 437 (Alaska 2017) .

[6]    *Ott*, 463 P.3d at 185.

[7]    The factors the court must consider are set out in AS 25.24.150(c)(1)-(9):

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

state, the court had "to determine which parent *better* satisfies those factors" because "the court *must* grant primary physical custody to one parent."[8]

### 1. Factors carrying little weight

The superior court found each parent equally capable under most factors, according little or no weight in either parent's favor. The court found the child's physical, emotional, mental, religious, and social needs[9] were typical for a child of her age. The court found love and affection between the child and each parent, noting

---

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

[8]     *Ott*, 463 P.3d at 188 (emphases in original).

[9]     AS 25.24.150(c)(1).

simply that "both parents love [her] and . . . she loves them."[10]   Addressing "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child,"[11] the court noted that "these parties don't work well together" and "[n]either party is particularly good at communicating with the other or more willing to facilitate a close continuing connection."   The court addressed substance abuse[12] by stating "[b]oth parents accuse the other of substance use and poor behavior,"  but it made no finding that this factor favored either parent.

The court noted other factors it considered relevant to determining which parent would better meet the child's needs.[13]  The court described testimony about guns in each parent's household.  The court discussed each parent's complaints about the other not following visitation schedules.  The court also noted testimony that Kiduse allegedly had stolen from Sasha's mother, which he denied.  The court ultimately found these factors had no "significant impact" on the child's best interests.

The court made no findings about two factors:  the child's preference[14] and "evidence of domestic violence, child abuse, or child neglect . . . or a history of violence between the parents."[15]  But the record supports that the child was not old enough to form a preference for either parent.[16]  And nothing before the court made domestic violence relevant; the parties did not raise the issue in their motions to modify

---

[10]     AS 25.24.150(c)(4).

[11]     AS 25.24.150(c)(6).

[12]     AS 25.24.150(c)(8).

[13]     AS 25.24.150(c)(9).

[14]     AS 25.24.150(c)(3).

[15]     AS 25.24.150(c)(7).

[16]     *See, e.g.*, *Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 493 (Alaska 2017) (noting court might rely on "well-reasoned preference by a mature teenager").

custody or their testimony. The court must discuss only those factors it finds relevant based upon the evidence presented.[17] When there is "no substantive dispute" about a factor, the court "need not specifically address it."[18] Thus the court did not need to discuss domestic violence or the child's preference.

### 2. Deciding Factors

The court most heavily weighed two factors. First was the "capability and desire of each parent" to meet the child's needs.[19] The court noted: "Both parents want to meet [the child's] needs," but Kiduse had "mostly been the one doing so." The court heard testimony that Kiduse had steadier employment, a better job waiting for him when he moved, and met more of the child's "day to day needs with the help of his mom."

Second was the length of time the child "lived in a stable, satisfactory environment and the desirability of maintaining continuity."[20] The court reasoned that the child's "main social structure is family" and that if she remained in Alaska after Kiduse and his family moved out of state, "she would lose significant relation[al] stability with her grandmother and her aunts." The court also was concerned that if the child moved out of state she would have less contact with Sasha and Sasha's mother. But the court ultimately decided that separation from Kiduse's family members would be more detrimental to the child because they were the "support and caregivers she has had all of her life."[21]

---

[17] *Virgin v. Virgin*, 990 P.2d 1040, 1045 (Alaska 1999) (quoting *Park v. Park*, 986 P.2d 205, 207 (Alaska 1999)).

[18] *Id.* (quoting *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 138 (Alaska 1997)).

[19] AS 25.24.150(c)(2).

[20] AS 25.24.150(c)(5).

[21] Sasha asserted to us at oral argument that Kiduse's family actually did not move out of state with Kiduse. But we review the record as it existed when the superior

Findings are adequate if they "give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[22] The court does not need to discuss factors that are unrelated to the facts.[23] In this case the superior court's findings were brief for some factors, but the court entered more detailed findings on the two factors it weighed most heavily: each parent's ability and willingness to meet the child's needs and the continuity and stability of the child's relationships. The court correctly applied the statutory best interests factors to those facts; we see no abuse of discretion in its analysis favoring the child moving out of state with Kiduse.

## C.    Other Issues

Although not noted in Sasha's statement of points on appeal or expressly discussed in her brief to us, Sasha asserted to us at oral argument that she had asked the superior court judge to recuse from the case because the judge's decisions were "unfair" and "one-sided," that the judge declined to do so, and that the judge told her that she could appeal that decision. But the record shows that at the same time Sasha requested reconsideration of the custody decision, she filed a court form requesting a different judge. The form she used provides for a party to reject a judge without giving a reason, but it must be filed within days of the judge being assigned to the case. The court correctly denied this request as untimely. A week later the court denied Sasha's request for reconsideration, and the court correctly informed her that she had 30 days to appeal. Neither the form Sasha filed nor her appeal brief indicate to us how the judge's decision was based on alleged unfair prejudice, and we do not address this further.

---

court made its decision. Sasha may take this point up with the superior court in the subsequent custody proceedings.

[22]    *Virgin*, 990 P.2d at 1044 (quoting *Bird v. Starkey*, 914 P.2d 1246, 1249 n.4 (Alaska 1996)).

[23]    *Thomas v. Thomas*, 171 P.3d 98, 106 (Alaska 2007).

Sasha noted in her statement of points on appeal that the custody decision would impose a financial burden and that she would not be able to afford visitation transportation. Sasha also very briefly mentioned the financial burden in her appeal brief, but at oral argument before us she said she had obtained employment and that the child had been in Alaska for visitation earlier in the year. If the financial burden relating to visitation becomes an issue, Sasha should take it up with the superior court.

Finally, as we noted when discussing the superior court's order, the visitation schedule is based on the local Texas school's schedule. Sasha did not mention this in her points on appeal or in her brief to us, but she raised a concern about it at oral argument to us. The child now is a little over three years old. We recognize that a school calendar visitation framework for a child not yet in school may be too rigid and unnecessarily restrictive, and nothing in the superior court's oral or written findings suggests another basis for restricting Sasha's visitation during the child's preschool years. We therefore remand for further consideration of whether the school schedule is an appropriate visitation benchmark at this time.

## V.    CONCLUSION

We AFFIRM the superior court's custody modification decision but remand for further consideration of the school-calendar-based visitation framework.